VMC BEHAVIORAL HEALTHCARE SERVICES, DIVISION OF VAS-QUEZ GROUP, INC., Plaintiff,

v.

THE UNITED STATES, Defendant,

and

Magellan Behavioral Health, Intervenor.

No. 01–473C.

United States Court of Federal Claims.

Filed Aug. 31, 2001.

Reissued Sept. 18, 2001 *.

---

* This opinion is being reissued for publication. The opinion of August 31, 2001 was filed under seal. The parties were given an opportunity to suggest redactions. None were received.

Hilary Cairnie, Dykema Gossett, PLLC, Washington, D.C., argued for plaintiff.

Bryant Banes, U.S. Department of Justice, Commercial Litigation Branch, Civil Division, argued for defendant.

David Hazelton, Latham & Watkins, Washington, D.C., argued for defendant-intervenor.

## OPINION

BRUGGINK, Judge.

This is an action brought pursuant to the court's bid-protest jurisdiction. *See* 28 U.S.C. § 1491(b) (1994 & Supp. V 1999). Plaintiff seeks injunctive relief related to a contract awarded by the Health Resources and Services Administration ("HRSA") to defendant-intervenor, Magellan Behavioral Health ("Magellan"). Plaintiff, VMC Behavioral Health ("VMC"), challenges both the underlying contract award, which took place on December 1, 2000, and an August 10, 2001 modification to the contract which plaintiff alleges violates the Competition in Contracting Act ("CICA").[1] Plaintiff seeks a temporary restraining order to enjoin HRSA from implementing the modification to Magellan's contract. The court, however, denied plaintiff's request in an August 16, 2001, Order.

At the court's direction, the issue of the Magellan contract modification was isolated for separate, expedited consideration. Consequently, currently pending are plaintiff's motion to enjoin the modification of Magellan's contract and defendant's motion to dismiss, or, alternatively, for summary judgment with respect to the modification. Oral argument was held on August 30, 2001. Reserved for hearing on September 21, 2001, is plaintiff's request for permanent relief with respect to the underlying contract award.

During oral argument, and over defendant and defendant-intervenor's objection, the court agreed to consider the affidavits of Dr. Mary Vasquez, a principal in VMC, and to hear her limited live testimony. Because the court also held that it would allow no further supplementation of the record with respect to the possibility of a permanent injunction against the modification, counsel for VMC agreed that the record on the issue of the Magellan contract modification would be complete at the end of the August 30 hearing. Consequently, having a complete record in front of it, the court deems the merits of the modification question to be fully submitted for final ruling on permanent relief. For the reasons explained at the conclusion of the hearing, and as further set forth below, we deny plaintiff's request for injunctive relief and grant defendant's motion for summary judgment, limited to the question of the contract modification.

## BACKGROUND

VMC's challenge to the Magellan contract modification must be grounded in that earlier award. Accordingly, the following background is necessary.

To help promote and maintain the physical and mental well-being of its employees, the federal government, through Federal Occupational Health ("FOH"), a division of the U.S. Public Health Service, Department of Health and Human Services ("HHS"), provides its employees and employees' family members with Employee Assistance Program ("EAP") services. These services include confidential consultation, assessment, counseling, problem solving and/or outside referral and follow-up services for alcohol, drug or other problems which may adversely impact an employee's work performance.

On June 16, 2000, HHS, acting through the Health Resources Services Administration ("HRSA"), issued solicitation number DFOH–30(0). The stated purpose of the solicitation was "to obtain Contractors who will provide EAP and Work/Life Programs to Federal employees and organizations located throughout the United States including the

---

1. Codified at 41 U.S.C. § 253 (1994 & Supp. IV 1998).

Pacific Islands, Puerto Rico and the Virgin Islands." AR at 481. "The Government reserv[ed] the right to make one contract award for the entire range of services ..., any combination of awards, or no awards ...." AR at 325.

A limited number of solicitation provisions figure into the parties' presentations. Attachments to the solicitation identified all of the federal agencies that currently had agreements with FOH for EAP services and listed 36 cities where EAP offices were expected to be maintained by the contractor. In addition, however, in section C of the solicitation, "Description/Specification/Work Statement," under the heading "Scope," the following information also appeared with respect to the possible expansion of the contract to include United States Postal Service ("USPS") employees:

> Program services contracted as a result of this solicitation currently are stipulated to serve organizations that have agreements with FOH for services. These organizations may over time change resulting in increases or decreases in the numbers of participating organizations and clients. *FOH also currently has separate contracts for EAP services that are provided to the U.S. Postal Service. Currently, these are separate contracts, however, at the Government's option, services to the U.S. Postal Service may be added to this contract in the future.*

> When separate FOH contracts exist, Contractors are required to support each other when requested by FOH. For example, EAP Staff Counselors whose workloads are lower than normal capacity, may be required to provide service for U.S. Postal Service employees.

AR at 66–67 (emphasis added).

The solicitation also contained a "Level of Effort" provision that stated "[i]t is not possible to determine the exact quantities of service required over the term of this contract due to increases or decreases in FOH customer agency needs.... The Government will negotiate significant changes in the level of effort." AR at 9. The "Level of Effort" provision was later amended to include:

> Based on the historical growth and future projections, it is estimated that annual increases in EAP services may occur. Therefore, customer organizations may have a need for additional services as described in section C throughout the contract year.

> Each year of the contract the Government may elect to exercise one or all of the following options in order to increase the level of effort due to annual growth.

> Option B.1.a.(1)Annual direct labor effort shall be increased up to 5%.

> Option B.1.a.(2)Annual direct labor effort shall be increased by up to 10%.

> Option B.1.a.(3)Annual direct labor effort shall be increased by up to 15%.

AR at 336. In addition to the "Level of Effort" provision, the solicitation incorporated a standard Order Limitation clause, FAR 52.216–19, which provided that the contractor was not obligated to honor any order, or orders, under the contract that exceed 2,000,-000 covered lives.

On August 3, 2000, VMC timely submitted its technical and business proposals in response to the solicitation. In its technical proposal, VMC stated that it "understands that the estimated population for this project stands at approximately 351,000 employees and that this number may increase or decrease dependent upon the customer organizations' workforces." AR at 1466. VMC's technical proposal also included numerous references to a separate contract for EAP services it currently holds with FOH that covers approximately 400,000 USPS employees. For example, in response to the government's statement that the number of employees covered for EAP services is estimated and may vary as customer organizations increase or decrease, VMC stated:

> For the past 16 years, [VMC] has successfully provided quality employee assistance program services to the [FOH] EAP Federal Agency Consortium with covered populations ranging from 6,000 to 70,000 employees. In addition, since 1993, VMC has provided EAP services to more than 400,000 employees of the U.S. Postal Service under an FOH contract.

AR at 1466–67. VMC also attached to its proposal a copy of FOH's year end report on the USPS EAP services provided between October 1, 1998 and September 30, 1999. Among other things, the report stated that the average number of employees covered during that time was 849,630. VMC's USPS contract is set to expire on September 30, 2001.

On August 8, 2000, Magellan submitted its technical and business proposals in response to the solicitation. At the time Magellan submitted its proposal, it, too, was performing under a separate USPS EAP contract with FOH. Magellan's USPS contract covers approximately 456,000 employees and is also set to expire on September 30, 2001.

On December 1, 2000, the HRSA, awarded the contract, number HRSA–232–DFOH–86(1), for EAP Short-term Problem Solving, Assessment and Referral, and EAP Customized services, to Magellan. The contract incorporates all of the solicitation's provisions heretofore mentioned except the Order Limitations clause. The contract was valued at a total estimated $32,958,536 for the base year plus four option years. Pursuant to the December 2000 contract, Magellan has been providing EAP services to numerous agencies and branches of the military, including, but not limited to, the Department of the Navy, the Department of Agriculture, and the General Services Administration.

On May 14, 2001, the HRSA announced in the Commerce Business Daily ("CBD") that it intended to "exercise the negotiated option to provide [EAP] services to [USPS] employees" under contract number HRSA–232–DFOH–86(1), the contract Magellan was awarded in December of 2000. The announcement also stated:

> Offerors interested in performing USPS EAP services should submit information sufficient to demonstrate that they can perform the work and provide an overall better value to the Government. If, based on the information received, the Government determines that another offeror possesses the capability to perform the services and has submitted an offer which is determined to represent an overall better value, then the Government will elect not to exercise the option. Upon such a determination ..., USPS services will be obtained under a separate full and open competitive requirement.

Pl's App. at 0015. On May 21, 2001, VMC responded to this CBD notice to express an interest in performing the USPS EAP services.

On June 14, 2001, the HRSA released a Request for Information ("RFI") with respect to EAP services, stating that the approximate number of USPS employees that the option would cover was 856,000. The information provided by interested parties would be used for best value comparison purposes only and no contract award would be made as a result of the RFI's issuance. On July 16, 2001, VMC submitted its response to the RFI.

On August 10, 2001, the HRSA notified VMC that it chose to elect the "negotiated option" under Magellan's December 2000 contract. The agency issued a modification to Magellan's contract the same day. As a result, when Magellan and VMC's separate USPS contracts expire on September 30, 2001, Magellan will begin to provide EAP services to all of the postal employees previously covered by both it and VMC, approximately 840,000 persons.

VMC maintains that the modification to Magellan's contract exceeds the scope of the original contract, and thereby, circumvents full and open competition. Defendant and defendant-intervenor, Magellan, argue that it falls within the scope of the original contract.

## DISCUSSION

■ Plaintiff will succeed on the merits if we determine any of the following: (1) that there was bad faith on the part of procurement officials; (2) that there was not a reasonable basis for the procurement decision; (3) that the procuring officials abused their discretion; or (4) that pertinent statutes or regulations were violated in a way that was prejudicial to VMC. *See Data Gen. Corp. v. Johnson,* 78 F.3d 1556, 1562 (Fed.Cir.1996); *Keco Indus., Inc. v. United States,* 203 Ct.Cl. 566, 492 F.2d 1200, 1203–04 (1974).

■ Plaintiff alleges that the government violated CICA by procuring EAP services for postal employees from Magellan without either the necessary competition or findings excusing the use of competitive procedures. Under CICA, "full and open competition through the use of competitive procedures" is fundamental to government contracting. 41 U.S.C. § 253(a)(1)(A) (1994). The requirement for full and open competition cannot be circumvented through the use of contract modifications. *See AT&T v. Wiltel,* 1 F.3d 1201 (Fed.Cir.1993). As we held in *CCL v. United States,* 39 Fed. Cl. 780, 791 (1997), contract modifications cannot materially depart from the scope of the original procurement, otherwise the modification prevents potential bidders from participating in what should be a new procurement. In this respect it is relevant to inquire into whether potential bidders at the time of the original contract would have been on notice that the later modification was within the reasonable scope of the solicited material or services.

■ We note at the outset that VMC does not contend that there is any difference in the nature of the EAP services in the original Magellan contract and those in the modification. Instead, plaintiff contends that the sheer increase in volume over the work contracted for in the fall of 2000 could not reasonably have been anticipated. The government and the intervenor counter with the following statement in the scope of work outlined in the original solicitation: "FOH also currently has separate contracts for EAP services that are provided to the USPS. Currently, these are separate contracts, however, at the Government's option, services to the USPS may be added to this contract in the future." AR 66–67. They also point out that, as VMC personnel knew, there were two, and probably no other contracts for such services, one held by VMC and one held by Magellan. As Dr. Vasquez conceded during her testimony, she knew of her company's contract with respect to over 400,000 USPS employees, and was aware that Magellan had

a similar contract. Indeed, as previously noted, VMC's proposal attached a copy of the FOH annual report which specifically provided an overview of the EAP services currently being provided to the USPS. There is ample reason to conclude, therefore, that VMC personnel were aware of the possible scope of an addition of services to the USPS.

VMC has four responses. First, it contends that the two-line reference to the possibility of adding EAP services for the USPS would not lead a reasonably prudent offeror to anticipate the addition of approximately 850,000 USPS employees, spread across over 100 cities. But that reference, which Dr. Vasquez testified she saw, should have been cause for concern. The language is not limited in any fashion to a portion of USPS employees. VMC had every reason to know that approximately 840,000 employees could be added. The fact that the language only appears once does not detract from its potential notice value, particularly given VMC's special knowledge of the background circumstances, i.e., the separate contract for EAP services that it was currently providing for over 400,000 postal employees.

VMC contends, however, that this language must be read in context with the rest of the solicitation, which contains contra-indications. Plaintiff argues that the pricing tables included in the solicitation, along with the annual growth limitations set out in section B.1.a., the "Level of Effort" provision, led it to believe that any addition of USPS work would be limited to "optional services," specifically the EAP website, legal and financial consultation services. Dr. Vasquez explained that Tables VI through XVII, which dealt with optional services, specifically contemplated service to over 1,000,000 employees.[2] Tables I–V, however, which refer to basic EAP services, speak to level of effort with respect to approximately 358,000 employees. Section B.1.a. capped any increase in effort with respect to Tables I through V work at 30%. This would limit the increase in basic EAP services, in her view, to approximately 100,000 employees, far less than the

2. The tables refer to "covered lives." Dr. Vasquez testified that she understood the term to

refer to employees.

approximately 850,000 employees added by the modification.

We reject plaintiff's interpretation. The 30% figure clearly applies to the cap on the increase in the "Level of Effort" actually contracted for, i.e., services for the approximately 350,000 employees of the covered agencies. The USPS was not a covered agency; it would have required a modification to make it one. Even if the addition of the USPS was embraced by the introductory language of section B.1.a, we do not view the percentage cap on annual growth, by itself, as a limitation on negotiated changes.

In addition, VMC argues that consolidating EAP services to the USPS with the Magellan contract is contrary to the government's stated policy against reliance on a single vendor. As an expression of this "policy," VMC points to the question and answer during the solicitation process:

Q234 If the Government does not delete Section H.22 [which prohibited covenants not to compete], please identify the statutory or regulatory authority under which the Government is exercising the rights to be exercised under Section H.22.

A234 The general intent of the Covenant [not to compete] which restricts Key Personnel from providing post-employment service for FOH or FOH vendors tends to increase the costs to the Government in areas such as training and recruitment and *fosters Government reliance on a single vendor. Such results are contrary to the Government's interest and general procurement policies embodied in the Federal Acquisition Regulations.*

(Emphasis supplied.)

We find this insufficient proof of any such policy, much less one that was so rigid as to prohibit what the solicitation itself plainly permitted, namely award to a single contractor.

While the warning in the scope of work clause is concise, it was adequate to put this plaintiff on notice of the potential significance of a modification to include the USPS. If VMC had any reason for doubt, the opportunity to ask was during the initial solicitation, not nearly a year later. VMC consequently cannot contend that it was prejudiced by an out of scope modification.

We have considered VMC's other arguments in support of injunctive relief and reject them. Having addressed the merits of the government's motion for summary judgment, it is unnecessary to consider its motion to dismiss based on untimeliness, which we find does not implicate jurisdictional concerns.

## CONCLUSION

We grant defendant's motion for summary judgment with respect to VMC's challenge to the Magellan contract modification. Plaintiff's motion for a preliminary injunction is denied. The balance of the action remains pending. Plaintiff is directed to file a status report on behalf of all parties, on or before September 5, proposing further proceedings. The parties are directed to notify chambers on or before September 11, 2001 whether any portions of this opinion should be redacted prior to publication.