**AMERICAN APPAREL, INC., Plaintiff,**

v.

**UNITED STATES, Defendant,**

v.

**Bluewater Defense, Inc., Defendant–Intervenor.**

No. 12–293C

United States Court of Federal Claims.

Filed: November 30, 2012

Redacted Version Issued for Publication: December 14, 2012 [1]

---

1. This opinion was issued under seal on November 30, 2012. The parties were asked to propose redactions prior to public release of the opinion. This opinion is issued with the redactions that the parties proposed in response to the court's request. Where words have been redacted, it is reflected in the text of the opinion with the word "[deleted]."

Victor A. Kubli, Grayson Law Center, P.C., Germantown, MD, for plaintiff. With him was Alia J. Roberts, Grayson Law Center, P.C., Falls Church, VA.

William J. Grimaldi, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him were Kirk T. Manhardt, Assistant Director, Jeanne E. Davidson, Director, Commercial Litigation Branch, and Stuart F. Delery, Acting Assistant Attorney General, Civil Division.

Marc Lamer, Kostos and Lamer, P.C., Philadelphia, PA, for defendant-intervenor.

Post–Award Bid Protest; Motion to Dismiss; Contract Modification

### OPINION

HORN, J.

### FINDINGS OF FACT

The United States Defense Logistics Agency (DLA), Defense Supply Center Philadelphia, issued Solicitation SPM1C1–08–R–0153 (the solicitation) for "Coats, All Weather, Various, Mens and Womens" for the United States Marine Corps, Army, and Navy on September 10, 2009. The solicitation sought proposals for five line items, with a base period of one year and four option years for each line item. The line items solicited were: Item 0001, for "PGC [Product Group Code] 02850 Coat, All Weather, Marine Corp Men's," Item 0002, for "PGC 02851 Coat, All Weather, Marine Corp Women's," Item 0003, for "PGC 02110 Coat, All Weather, Army Women's," Item 0004, for "PGC 01940 Coat, All Weather, Navy Men's," and Item 0005, for "PGC 01908 Coat, All Weather, Navy Women's." [2]

The September 10, 2009 solicitation included a Notice to Offerors, in which the agency listed evaluation criteria to be used in selecting the awardee:

Proposals will be evaluated for both technical merit and price reasonableness following the evaluation procedures in this solicitation. In order to provide full consideration of your qualification for contract award, you are encouraged to ensure that the information furnished in support of your technical proposal is factual, accurate

---

2. Prior to issuing the solicitation, on August 10, 2009, DLA released its pre-solicitation Initial Procurement Synopsis, detailing its intention to announce a solicitation for universal all-weather coats. The Initial Procurement Synopsis stated that "additional three [3] fully competitive All Weather Coats (127 NSNs [national stock numbers]) may be added on a post-award basis via Add/Delete Clause." (first bracket in original). The Initial Procurement Synopsis included the listing for the potential add items as an attachment, describing them as "PGC 02111 Army, Men's, Coat, All–Weather," "PGC 01958 Air Force Men's, Coat, All–Weather," and "PGC 01959 Air Force Womens, Coat, All–Weather."

and complete. The Department of Defense (DoD) is committed to applying "Best Value" contracting as a means to rely on industry for timely delivery of quality products, while reducing the Government's administrative costs associated with contractor oversight. To this end, we are evaluating factors in addition to price under this solicitation.

The Notice to Offerors further provided:

Offerors are required to submit a technical proposal consisting of the following technical evaluation factors:

(1) Product Demonstration Model (PDM)

(2) Past Performance/Experience

    a. Experience

3. The Notice to Offerors provided further:

PDM is the most important factor and will be used to assess the credibility of the overall proposal with respect to the offeror's technical ability to interpret specifications and manufacture an actual end item. Experience/Past Performance is the second most important factor, as an indicator of vendors [sic] ability to deliver that end item free of defects, on-time, and provide support to socioeconomic entities during contract performance. Under the factor Experience/Past Performance, experience is the most important subfactor, and the best indicator of offeror's ability to perform overall. Quality of Items is the second most important subfactor, as an indicator of offeror's ability [sic] provide a product free of defects; Delivery Performance is the third most important subfactor, as an indicator of ability to delivery [sic] on time; and Compliance with Contractual Socioeconomic Subcontracting is the fourth most important subfactor, as an indicator of offeror's ability to adhere to promises made to support socioeconomic entities. The Socioeconomic Consideration is the third most important factor in which support will be made part of any resulting contract for use in determining how well the offeror has adhered to is [sic] socioeconomic plan.

4. FAR 52.212–2 Evaluation—Commercial Items, provides:

As prescribed in 12.301(c), the Contracting Officer may insert a provision substantially as follows:

Evaluation—Commercial Items (JAN 1999)

(a) The Government will award a contract resulting from this solicitation to the responsible offeror whose offer conforming to the solicitation will be most advantageous to the Government, price and other factors considered. The following factors shall be used to evaluate offers:

(Contracting Officer shall insert the significant evaluation factors, such as (i) technical

    b. Quality of Items

    c. Delivery Performance

    d. Compliance with Contractual Socioeconomic Subcontracting

(3) Socioeconomic Consideration.[3]

In a separate section titled "FAR 52.212–2 Evaluation—Commercial Items (JAN 1999)," [4] the solicitation stated that technical factors were "[s]ignificantly more important than cost or price."

The solicitation also included a clause titled, "52.216–9006 Addition/Deletion of Items" (the Add/Delete Clause).[5] The Add/Delete Clause provided:

As prescribed in 16.506(90),[6] insert the following clause:

capability of the item offered to meet the Government requirement; (ii) price; (iii) past performance (see FAR 15.304); (iv) small disadvantaged business participation; and include them in the relative order of importance of the evaluation factors, such as in descending order of importance.)

Technical and past performance, when combined, are ___ (Contracting Officer state, in accordance with FAR 15.304, the relative importance of all other evaluation factors, when combined, when compared to price.)

(b) Options. The Government will evaluate offers for award purposes by adding the total price for all options to the total price for the basic requirement. The Government may determine that an offer is unacceptable if the option prices are significantly unbalanced. Evaluation of options shall not obligate the Government to exercise the option(s).

(c) A written notice of award or acceptance of an offer, mailed or otherwise furnished to the successful offeror within the time for acceptance specified in the offer, shall result in a binding contract without further action by either party. Before the offer's specified expiration time, the Government may accept an offer (or part of an offer), whether or not there are negotiations after its receipt, unless a written notice of withdrawal is received before award.

FAR 52.212–2 (current as of Nov. 21, 2012).

5. The clause "52.216–9006 Addition/Deletion of Items" is apparently referring to the Defense Logistics Acquisition Directive (DLAD) Revision 5, issued on May 11, 2000 and revised on August 15, 2012, *available at* http://www.dla.mil/Acquisition/Documents/DLAD%20Rev%205.htm. DLA, however, erroneously referred to this directive as a FAR provision in its February 18, 2011 request for additional items.

6. The cited provision, 16.506(90), is part of the DLAD Subpart 16.5, Indefinite–Delivery Con-

ADDITION/DELETION OF ITEMS (AUG 2005)—DLAD

(a) The Government reserves the right to unilaterally delete items that were available from only one manufacturer at the time of award if an alternate source of supply becomes available or the Government's requirements are modified to provide for full and open competition. The Government will provide a 30 day advance notice to the contractor prior to deleting any item from the contract.

(b) New items may be added to the contract through bilateral modification with negotiated prices. All new requirements are subject to synopsis prior to addition to the contract.

Six offerors submitted proposals in response to the solicitation. One of the offerors, [deleted], was eliminated for failure to submit prices in its proposal. The technical proposals from the remaining five offerors were evaluated.

On December 13, 2010, the Source Selection Authority and contracting officer, T.D. Lockley, issued a Source Selection Decision, identifying DJ Manufacturing, Corp. (also referred to as DJ Mfj in the administrative record)[7] as representing the best value to the government for Item 0001, and identifying American Apparel, Inc. (American Apparel) as representing the best value to the government for Items 0002, 0003, 0004, and 0005. The Source Selection Decision referred to the FAR 52.212–2, Evaluation—Commercial Items, included in the September 10, 2009 solicitation, as the basis for its selection decision, specifying that "all evaluation factors other than cost or price, when combined, are significantly more important than cost or price."

The Source Selection Decision included charts showing which of the five proposals represented the best value to the government, for each of the items, 0001 through 0005, identified in the solicitation. The charts were based on alphabetical and numerical evaluations and each proposal received a number of alphabetical ratings, with "E" for exceptional, "V" for very good, "S" for satisfactory, "M" for marginal, "U" was for unacceptable, and "N" for neutral (no submission). Each proposal also received a numerical ranking, with "1" being the highest and "5" being the lowest.

With respect to the Item 0001, "PGC 02850 Coat, All Weather, Marine Corp Men's," the Source Selection Authority, prepared the following evaluation summary in the December 13, 2010 Source Selection Decision: [8]

tracts, and the provision 16.506, "Solicitation provisions and contract clauses," was mentioned on page 56 of the original September 10, 2009 solicitation, under the section "52.216–9006 Addition/Deletion of Items."

DLAD 16.506(90) provides:
Additions or deletions. The clause at 52.216–9006 may be used in solicitation when a mechanism is needed for making additions or deletions to items covered by the contract, e.g. corporate contracts, LTCs incorporating a manufacturer's price list, comprehensive weapon system spare parts support or a specific range of items, etc.

(1) Competition requirements must be addressed before new items may be added to a contract.

(2) A scope of contract statement is necessary in both solicitation and contract to clearly establish the Government's intentions and rights under the contract. The contract scope statement should communicate a comprehensive objective for the acquisition, i.e. whether it is based on a specific stock class, weapon system, product line, manufacturer, or distributor. The scope statement must not include information that conflicts with Section B or other terms of the solicitation. Contract specialists have considerable flexibility in defining contract scope but must be careful to avoid ambiguities.
DLAD 16.506(90) (current as of Aug. 15, 2012).

7. During the course of the procurement, on September 13, 2010, DJ Manufacturing, Corp. became Bluewater Defense Inc. (Bluewater). The offeror is referenced under both names throughout the administrative record.

8. The Source Selection Authority prepared similar evaluation summaries for the other four items, Items 0002 through 0005. Because the evaluation methods used in the December 13, 2010 Source Selection Decision are not at issue in the above-captioned protest, after a detailed description of the evaluation process for Item 0001, as an example for DLA's overall evaluation methodology, the analysis below will be limited to general discussion of the evaluation results.

| OFFEROR | PDM (A) | PAST PERFORMANCE | | | | | Socioeconomic Considerations | TECH PROP | UNIT PRICE (WAP)[9] | TOTAL EVALUATED PRICE |
|---|---|---|---|---|---|---|---|---|---|---|
| | | A | B | C | D | O/A[10] | | | | |
| DJ MFJ (4) | S | V | V | V | M | V | 2 | S | [deleted] | [deleted] |
| AMERICAN APPAREL (1) | V | E | V | V | U | V | 3 | V | [deleted] | [deleted] |
| [deleted] (6) | M | S | V | V | N | S | 4 | M | [deleted] | [deleted] |
| [deleted] (2) | V | E | V | M | N | V | 5 | V | [deleted] | [deleted] |
| [deleted] (3) | S | V | V | V | N | V | 1 | S | [deleted] | [deleted] |

The Source Selection Authority conducted a detailed comparison of each offer, determining that Bluewater represented the best value to the government for Item 0001. Comparing Bluewater and American Apparel for Item 0001,[11] the source selection decision stated:

> Although American Apparel has a superior technical proposal, paying a [deleted] premium to American Apparel is not considered in the best interest of the Government. In comparing PDMs, which is the most important factor, both vendors had deficiencies that were easily correctable, but DJ also had four deficiencies that require preventative corrective action. While there is a difference in the quality of the PDMs, it is not considered to be significant after considering the number of deficiencies in each offeror's PDM as well as the nature of the deficiencies. Although DJ had four deficiencies requiring preventative corrective action, that is a relatively low number and the overall number of deficiencies in each PDM is fairly close (9 vs. 12). Because both vendors' PDMs meet the stated technical requirements of the solicitation and do not contain any significant deficiencies, there is no significant difference between the two PDMs.

As to past performance, the Source Selection Authority concluded:

> [W]hile American has more extensive experience in making the same exact item, DJ has successfully manufactured a similar item, in particular, the Extreme Cold Weather Parka, without any quality issues. Both DJ and American have relatively low delinquency rates, although it is noted that American Apparel has manufactured a much larger number of the same and similar coats. While American has strengths under Past Performance/Experience, given DJ's very good quality and delivery record, and their experience, the strengths are not substantial enough to warrant paying a [deleted] premium to American.

Regarding Socioeconomic Conditions, the Source Selection Authority determined that "[n]o adjectival rating exists for the Socioeconomic Conditions factor, the third and least important factor, because offerors were ranked in comparison to each other with respect to offeror efforts to develop additional opportunities for small, small disadvantaged and women-owned small businesses."

The December 13, 2010 Source Selection Decision included a similar analysis for Item 0002, "PGC 02851 Coat, All Weather, Marine Corp Women's." Comparing American Apparel to the other offerors, the Source Selection Authority determined that American Apparel was the best value to the government for Item 0002. As to the differences between

9. "WAP" refers to the Weighted Average Price, as defined by DLA.

10. "A" refers to Experience, "B" refers to Quality of Items, "C" refers to Delivery Performance, "D" refers to Compliance with Contractual Socioeconomic Subcontracting Goals, and "O/A" refers to Overall score.

11. The Source Selection Authority conducted a thorough analysis of all five offers received for

Item 0001. Having determined that Bluewater represented the best value to the government for Item 0001, the Source Selection Authority compared the other four offers to the one submitted by Bluewater. Because [deleted], [deleted], and [deleted] are not parties in the above-captioned protest, the analysis is limited to the offers submitted by American Apparel and Bluewater.

American Apparel and Bluewater, the December 13, 2010 Source Selection Decision stated:

American Apparel has a superior technical proposal (Very Good vs. Unsatisfactory) when compared to DJ Manufacturing. American has a superior PDM (Very Good vs. Unsatisfactory), the most important factor. While both vendors have the same Very Good rating for Past Performance, the second most important factor, American is considered superior having superior Experience, the most important subfactor. DJ is superior for Socioeconomic Considerations (second vs. third), the least important factor.

Finally, American Apparel's total evaluated price of $ 1,176,151.68 is [deleted] higher than DJ Manufacturing [sic] total evaluated price of [deleted], representing [deleted] additional premium dollars for the base year and four options years. Paying such a premium to American Apparel for a superior technical proposal and a superior PDM, is warranted and is considered in the best interest of the Government. In comparing PDMs, which is the most important factor, American's does not have any significant deficiencies, but DJ's PDM has a very significant deficiency that requires extensive corrective action or a remedy tantamount to a new PDM. The difference between the PDMs is considered significant after considering the nature of the deficiencies. Because DJ's PDM does not meet the stated requirements of the solicitation; because there is a significant difference between the PDMs; and because DJ failed to demonstrate their ability to produce an acceptable item indicating little to no probability of successful contract performance, the difference is so substantial that it warrants paying a premium to American Apparel.

The Source Selection Authority similarly found American Apparel the best value for Item 0003, "PGC 02110 Coat, All Weather, Army Women's." Comparing Bluewater and American Apparel, the Source Selection Authority concluded that American Apparel had a superior technical proposal, including the Product Demonstration Model and Past Performance/Experience. Although American Apparel's total evaluated price of $8,408,089.44 was approximately [deleted] percent higher than Bluewater's total evaluated price of [deleted], the Source Selection Authority concluded that "[p]aying such a premium to American Apparel for a superior technical proposal and PDM is warranted and is considered to be in the best interest of the Government."

Likewise for Item 0004, "PGC 01940 Coat, All Weather, Navy Men's," the Source Selection Authority determined that American Apparel represented the best value to the government based on its superior technical proposal, including the Product Demonstration Model and Past Performance/Experience. Again, the Source Selection Authority concluded that paying a premium of approximately eleven percent for a superior technical proposal, including a superior PDM, was warranted and considered in the best interest of the government. American Apparel's price of $12,354,251.20 was approximately [deleted] percent higher than Bluewater's price of [deleted], representing an additional sum of [deleted], based on the base year and four option years.

In the evaluation for Item 0005, "PGC 01908 Coat, All Weather, Navy Women's," American Apparel again was found to be the best value to the government based on its superior technical proposal, including the PDM and Past Performance/Experience. Although American Apparel's total evaluated price of $2,795,036.64 was approximately [deleted] percent higher than Bluewater's total evaluated price of [deleted], the Source Selection Authority concluded that paying such a premium to American Apparel was warranted and in the best interest of the government, based on American Apparel's superior technical proposal and PDM.

As a result of the evaluations, on December 22, 2010, DLA awarded Contract No. SPM1C1–10–D–1100 to Bluewater for Item 0001 and Contract No. SPM1C1–10–D–1099 to American Apparel for Items 0002, 0003, 0004, and 0005.

On February 18, 2011, DLA invoked the Add/Delete Clause included in the Septem-

ber 10, 2009 solicitation, and issued a request for additional items, Item 0006, "PGC 01958 Coat, All Weather, Air Force/Coast Guard Men's," and Item 0007, "PGC 01959 Coat, All Weather, Air Force/Coast Guard Women's," to American Apparel and Bluewater. Both items PGC 01958 and PGC 01959 had been specifically referenced in the August 10, 2009 Initial Procurement Synopsis, as all-weather coats that "may be added [to the solicitation] on a post-award basis via Add/Delete Clause." The Initial Procurement Synopsis also listed the potentially additional items as "PGC 02111 Army, Men's, Coat, All–Weather," "PGC 01958 Air Force Men's, Coat, All–Weather," and "PGC 01959 Air Force Womens, Coat, All–Weather."

Specifically, the February 18, 2011 request for additional items stated:

> In accordance with FAR [sic] clause 52.216–9006/ ADDITION AND DELETION OF ITEMS clause, referenced on page 56 of the solicitation, the attached two product group codes for the Air Force/ Coast Guard Men and Women All–Weather Coats are being proposed for addition to the Universal All Weather Coat Contract. All contract terms and conditions remain in effect and apply to the addition of any items. Two PreProduction Samples are required including one AWC, Air Force, Woman and one AWC, Air Force, man. All offers will be subject to evaluation procedures, as described in the subject solicitation. All offers remain valid for a mini-

mum of 100 days from the closing of this solicitation.... The Contracting Officer intends to make award without negotiations; therefore, your proposal should represent your best offer. Technical data is attached. The deadline for receipt of offers is February, 28, 20011[sic]. Vendors are requested to provide offer prices in advance of the deadline.

The 2011 request reiterated that "offers will be subject to evaluation procedures, as described in the subject [September 10, 2009] solicitation," but did not list separately the evaluation criteria to be considered in deciding whether Bluewater or American Apparel would provide the additional items.

On March 10, 2011, the initial February 28, 2011 deadline for submission of proposals was extended to March 14, 2011. American Apparel submitted its offer on February 25, 2011 and Bluewater submitted its offer on March 11, 2011. Bluewater's offer for Item 0006 was $12,973,435.20 for the base year and the four option years, and American Apparel's offer for Item 0006 was [deleted] for the base year and four option years. Bluewater's offer for Item 0007 was $4,429,724.88 for the base year and the four option years, and American Apparel's offer for Item 0007 was [deleted] for the base year and four option years. The government evaluated the offers by unit price and determined the following evaluated price for each item as proposed by the offerors:

| Offeror | Item 0006 | Item 0007 |
|---|---|---|
| Bluewater | [deleted] | [deleted] |
| American Apparel | [deleted] | [deleted] |

The DLA–FQCB Memo for Record, dated May 13, 2011, titled "Combined PreNegotiation Briefing Memorandum (PBM)/Price Negotiation Memorandum (PNM)/Price Analysis," stated that the February 18, 2011 request intended to add new items to an existing contract with similar items for which PDMs have been already evaluated, and, therefore, the request for additional items was issued only to Bluewater and American Apparel, for addition to either, or both, of

their contracts. The memorandum stated, with respect to the offers submitted in response to the February 18, 2011 request for additional items, that "price will be the determining factor to the addition of items." In addition, the memorandum also noted that the Air Force Man and Woman All–Weather Coats were "considered to be within the scope of the universe of all-weather coats as they [were] similar in kind and

complexity to the all-weather coat(s) under the Universal All–Weather Coat Contracts."

Based solely on Bluewater and American Apparel's prices, DLA modified Bluewater's contract to include both Items 0006 and 0007 on March 31, 2011. American Apparel was notified by letter on June 6, 2011 that it "was determined not to be the most advantageous to the Government based on price" for Items 0006 and 0007.

American Apparel filed a protest at the United States Government Accountability Office (GAO) on June 15, 2011, asserting, in part, that the "RFP [for the February 18, 2011 request for additional items] explicitly stated that the award decision would be based on 'best value;' and further stated that in conducting that best value determination 'Technical factors are ... Significantly more important than cost or price.' Nevertheless, the DSC [Defense Supply Center Philadelphia] admittedly made the award of Items 0006 and 0007 to BlueWater 'based on price.'" [12] On June 29, 2011, DLA announced that it "decided to take corrective action" and canceled the February 18, 2011 request for additional items, indicating that it would issue a new request, which more clearly stated the evaluation criteria. Following the cancellation, on June 30, 2011, the GAO dismissed American Apparel's protest because DLA canceled the February 18, 2011

addition of items request and noted that a cancellation "renders a protest academic." [13]

In the corrected request for additional items, issued to Bluewater and American Apparel on September 22, 2011, DLA stated:

> In accordance with DLAD Clause 52.216–9006, Addition/Deletion of Items, found on page 56 of the subject Solicitation SPM1C1–08–R–0153, the attached Items 0006 and 0007 for the Air Force/Coast Guard Men and Women All–Weather Coats are being solicited for addition to either the Universal All Weather Coat Contract SPM1C1–10–D–1099 or SPM1C1–10–D–1100.

> Offers will be evaluated based on price only.... All other terms and conditions of the offeror's contract, Contract SPM1C1–10–D–1009 [sic] and/or SPM1C1–10–D–1100 remain in effect and apply to the addition of items.

On September 30, 2011, and prior to plaintiff's resubmission of its offer for Items 0006 and 0007, American Apparel challenged the corrected request for additional items at the GAO. American Apparel argued that the corrected request violated FAR 16.505(b) (2011), "Orders under multiple-award contracts," which states that the contracting officer "should consider" "past performance on earlier orders under the contract, including quality, timeliness and cost control." Consequently, American Apparel argued that the

---

12. At the GAO, American Apparel also claimed that extending the deadline for the submission of proposals in response to the request for additional items, without changing the item requirements, was prejudicial. American Apparel explained that the notice about extending the deadline for the submission of proposals for Items 0006 and 0007 to March 14, 2011 was issued on March 10, 2011, nearly two weeks after the original February 28, 2011 deadline had passed, moving the deadline for proposals to March 14, 2011. According to American Apparel, "[s]uch an extension after the deadline for submission of offers, and with notice just a few days prior to the new deadline, is highly prejudicial to offerors like American that complied with the original deadline and were left with little time to create and submit a new or modified proposal. Such prejudice is particularly acute if BlueWater failed to meet the original deadline, or received notice of the extension earlier than American." As noted below, the GAO dismissed the protest after DLA canceled the February 18, 2011 request for additional items.

13. On July 8, 2011, following the DLA decision to take corrective action and cancel the February 18, 2011 request for additional items, and GAO's subsequent dismissal of American Apparel's protest, Bluewater filed a protest with the GAO arguing that the agency's corrective action was "improper because there was no merit to AAI's [American Apparel's] protest." On September 1, 2011, GAO dismissed Bluewater's protest, concluding that "BlueWater's contention that the agency should not have taken corrective action in response to American Apparel's protest, because in BlueWater's view the protest was untimely under our Bid Protest Regulations, is without merit." The GAO noted that "[o]ur Office has long held that when a contracting agency recognizes the validity of a protest and proposes to take corrective action, it is irrelevant whether the protest complied with the timeliness requirements of our Bid Protest Regulations."

notice should be amended to include past performance as a basis for award and not have price as the only factor. DLA sought dismissal of the protest, arguing that the request for Items 0006 and 0007 did not fall under FAR 16.505 because it was not an order under a multiple-award contract, but rather an addition to an existing contract, and that considering only price was consistent with the Add/Delete Clause. American Apparel responded, and asked the GAO also to consider FAR 15.304(c)(2) (2011),[14] which states: " 'The quality of the product or service shall be addressed in every source selection through consideration of one or more non-cost evaluation factors such as past performance....' "

On November 1, 2011, the GAO dismissed American Apparel's protest, finding that:

> [E]ven assuming for the sake of argument that the provisions of FAR § 16.505 are applicable here, they do not mandate that the agency consider past performance. In this regard, FAR § 16.505(b), in addition to expressly granting contracting officers "broad discretion in developing appropriate order placement procedures," sets forth certain things that the contracting officer must do or consider in the ordering

process. With regard to specific evaluation criteria, the FAR provides only that "the contracting officer must. .... [c]onsider price or cost under each order as one of the factors in the selection decision." FAR § 16.505(b)(1)(ii)(E). In contrast to the FAR's usage of the mandatory term "must" in referring to the consideration of price or cost, the FAR, as quoted above, uses the permissive term "should" in referring to the consideration of past performance information. FAR § 16.505(b)(1)(v)(A)(1). (second bracket in original).

Following issuance of the GAO decision, American Apparel filed a Request for Reconsideration with the GAO on November 10, 2011, arguing that pursuant to the Competition in Contracting Act (CICA) 10 U.S.C. § 2305(a)(2)(A)(i) (2006),[15] and FAR § 15.304(c)(2) (2011), the agency must consider non-cost or non-price related factors. American Apparel further insisted that "should" in the context of FAR § 16.505 (2011) means "an expected course of action or policy that is to be followed unless inappropriate for a particular circumstance," and that here, no explanation was given for a

---

14. FAR 15.304(c) states, in pertinent part:

> The evaluation factors and significant subfactors that apply to an acquisition and their relative importance are within the broad discretion of agency acquisition officials, subject to the following requirements:
> (1) Price or cost to the Government shall be evaluated in every source selection (10 U.S.C. 2305(a)(3)(A)(ii) and 41 U.S.C. 253a(c)(1)(B)) (also see part 36 for architect-engineer contracts);
> (2) The quality of the product or service shall be addressed in every source selection through consideration of one or more non-cost evaluation factors such as past performance, compliance with solicitation requirements, technical excellence, management capability, personnel qualifications, and prior experience (10 U.S.C. 2305(a)(3)(A)(i) and 41 U.S.C. 253a(c)(1)(A)); and
> (3) (i) Except as set forth in paragraph (c)(3)(iii) of this section, past performance shall be evaluated in all source selections for negotiated competitive acquisitions expected to exceed the simplified acquisition threshold.
> (ii) For solicitations involving bundling that offer a significant opportunity for subcon-

tracting, the contracting officer must include a factor to evaluate past performance indicating the extent to which the offeror attained applicable goals for small business participation under contracts that required subcontracting plans (15 U.S.C. 637(d)(4)(G)(ii)).
> (iii) Past performance need not be evaluated if the contracting officer documents the reason past performance is not an appropriate evaluation factor for the acquisition.

15. 10 U.S.C. § 2305(a)(2)(A)(i) provides, in relevant part:

> [A] solicitation for sealed bids or competitive proposals (other than for a procurement for commercial items using special simplified procedures or a purchase for an amount not greater than the simplified acquisition threshold) shall at a minimum include—
> (A) a statement of—
> (i) all significant factors and significant subfactors which the head of the agency reasonably expects to consider in evaluating sealed bids (including price) or competitive proposals (including cost or price, cost-related or price-related factors and subfactors, and noncost-related or nonprice-related factors and subfactors).

departure. The GAO issued a decision on March 14, 2012, stating, in part:

> As we explained to the protestor in our earlier decision, there is no requirement that past performance be considered under the instant solicitation. As the agency previously pointed out, the notification did not solicit quotations for the purpose of placing an immediate order, rather the notification was for the purpose of soliciting additional products for addition to the vendors' existing multiple award contracts as provided under FAR [sic] § 52.216-9006, Addition/Deletion of Items, and contemplated that future orders of those additional items would be further solicited from vendor....
>
> With respect to the new arguments that American Apparel has raised in its reconsideration request—that is that agencies must also consider vendor past performance under FAR § 15.304(c) and CICA—we will not consider new arguments and information that could have, and should

have, been raised in the protest. (citations omitted).

Shortly after American Apparel filed its September 30, 2011 protest with the GAO, on October 4, 2011, both Bluewater and American Apparel submitted revised offers in response to the corrected request for additional items, issued on September 22, 2011. Both offerors' price quotes were lower than those submitted in response to the February 18, 2011 request. Bluewater's offer for Item 0006 was $12,805,235.52 for the base year and the four option years, and American Apparel's offer for Item 0006 was [deleted] for the base year and four option years. Bluewater's offer for Item 0007 was $4,382,311.12 for the base year and the four option years and American Apparel's offer for Item 0007 was [deleted] for the base year and four option years.

DLA determined the weighted evaluated average prices of the offers as follows:

| Offeror | Item 0006 | Item 0007 |
|---|---|---|
| Bluewater | [deleted] | [deleted] |
| American Apparel | [deleted] | [deleted] |

In its April 11, 2012 DLA–FQCB Memo for Record, titled "Addendum to Combined Pre–Negotiation Briefing Memorandum (PBM)/Price Negotiation Memorandum (PNM)/ Price Analysis," the agency determined that Bluewater's prices for Item 0006 were [deleted] lower than American Apparel's, and its prices for Item 0007 were [deleted] lower from those submitted by American Apparel. Subsequently, on April 18, 2012, DLA issued a modification to Bluewater's contract reflecting the award of Items 0006 and 0007 to Bluewater, by "Amendment/Modification No. P00007" to Contract No. SPM1C1–10–D–1100. American Apparel was notified of the award to Bluewater by letter dated May 8, 2012.

American Apparel filed a protest in this court, asserting that pursuant to 10 U.S.C. § 2305(a)(2)(A)(i), FAR 15.304(c)(2) (current as of Nov. 21, 2012), and FAR 16.505(b)(1)(v)(A)(1) (current as of Nov. 21, 2012), DLA was required to, but did not, consider non-price related factors when awarding Items 0006 and 0007 pursuant to the Add/Delete Clause. Plaintiff seeks a permanent injunction requiring DLA to terminate the award to Bluewater for Items 0006 and 0007. Plaintiff also asks the court to "require the DLA to conduct the acquisition in accordance with law," and to grant such other relief as the court deems just and proper. Both defendant and defendant-intervenor filed motions to dismiss for lack of subject matter jurisdiction,[16] and defendant-

16. Defendant-intervenor argues that the Federal Acquisition Streamlining Act of 1994 (FASA), Pub.L. No. 103–355, § 1004(a)(1), 108 Stat. 3243, 3252–53 (codified as amended at 10 U.S.C. § 2304c (Supp. V 2011)), deprives the court of

jurisdiction over this protest as the government decision that American Apparel challenges was made "in connection with the issuance or proposed issuance" of a delivery order. Defendant does not adopt defendant-intervenor's view of the

intervenor also argued that plaintiff has failed to state a claim. Furthermore, both plaintiff and defendant, but not defendant-intervenor, have filed cross-motions for judgment on the administrative record.

## DISCUSSION

The Administrative Dispute Resolution Act of 1996 (ADRA), Pub.L. No. 104–320, §§ 12(a), 12(b), 110 Stat. 3870, 3874 (1996) (codified at 28 U.S.C. § 1491(b)(1)-(4) (2006)), amended the Tucker Act to establish a statutory basis for bid protests in the United States Court of Federal Claims. *See Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1330–32 (Fed. Cir.2001). The statute provides that protests of agency procurement decisions are to be reviewed under Administrative Procedure Act (APA) standards, making applicable the standards outlined in *Scanwell Laboratories, Inc. v. Shaffer*, 424 F.2d 859 (D.C.Cir.1970), and the line of cases following that decision. *See, e.g., Galen Med. Assocs., Inc. v. United States*, 369 F.3d 1324, 1329 (Fed.Cir.) (citing to *Scanwell Laboratories, Inc. v. Shaffer* for its reasoning that "suits challenging the award process are in the public interest and disappointed bidders are the parties with an incentive to enforce the law."), *reh'g denied* (Fed.Cir.2004); *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir.2004) ("Under the APA standard as applied in the *Scanwell* line of cases, and now in ADRA cases, 'a bid award may be set aside if either (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d at 1332)); *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir.2003); *Am. Fed'n of Gov't Emps. v. United States*, 258 F.3d 1294, 1302 (Fed.Cir.2001) ("Congress intended to extend the jurisdiction of the Court of Federal Claims to include post-award bid protest cases brought under the APA by disappointed bidders, such as the plaintiff in *Scanwell*."), *cert. denied*, 534 U.S. 1113, 122 S.Ct. 920, 151 L.Ed.2d 885 (2002). The Federal Circuit has stated that the Court of Federal Claims' jurisdiction over "any alleged violation of statute or regulation in connection with a procurement or a proposed procurement," 28 U.S.C. § 1491(b)(1), "provides a broad grant of jurisdiction because '[p]rocurement includes *all stages of the process of acquiring property or services*, beginning with the process for determining a need for property or services and ending with contract completion and closeout.'" *Sys. Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1381 (Fed.Cir.2012) (emphasis in original) (quoting *Res. Conservation Grp., LLC v. United States*, 597 F.3d 1238, 1244 (Fed.Cir.2010) (quoting 41 U.S.C. § 403(2))); *see also Distrib. Solutions, Inc. v. United States*, 539 F.3d 1340, 1345 (Fed.Cir.), *reh'g denied*, (Fed.Cir.2008) ("[T]he phrase, 'in connection with a procurement or proposed procurement,' by definition involves a connection with any stage of the federal contracting acquisition process, including 'the process for determining a need for property or services.'"); *RAMCOR Servs. Grp., Inc. v. United States*, 185 F.3d 1286, 1289 (Fed. Cir.1999) ("The operative phrase 'in connection with' is very sweeping in scope.").

■ Agency procurement actions should be set aside when they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (2)(D) (2006);[17] *see also*

---

contract at issue in this case, stating at oral argument: "[W]e did not raise this issue. We don't think it's a principal issue. I hate to disagree with Defendant–Intervenor." Defendant continued: "We believe that this is a multiple-award IDIQ [indefinite delivery, indefinite quantity] contract because there's no competition for individual delivery orders underneath line items, so therefore it doesn't apply." Given the nature of the IDIQ contract at issue in this case, and as a result of court's conclusion set out below, the

court does not reach defendant-intervenor's arguments regarding FASA.

17. The language of 5 U.S.C. § 706 provides:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

*Savantage Fin. Servs. Inc., v. United States,* 595 F.3d 1282, 1285–86 (Fed.Cir.2010); *Weeks Marine, Inc. v. United States,* 575 F.3d 1352, 1358 (Fed.Cir.2009); *Axiom Res. Mgmt., Inc. v. United States,* 564 F.3d 1374, 1381 (Fed.Cir.2009) (noting arbitrary and capricious standard set forth in 5 U.S.C. § 706(2)(A), and reaffirming the analysis of *Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d at 1332); *Blue & Gold Fleet, L.P. v. United States,* 492 F.3d 1308, 1312 (Fed.Cir.2007) ("[T]he inquiry is whether the [government's] procurement decision was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" (quoting 5 U.S.C. § 706(2)(A) (2000))); *Bannum, Inc. v. United States,* 404 F.3d 1346, 1351 (Fed.Cir.2005); *Contracting, Consulting, Eng'g LLC v. United States,* 104 Fed.Cl. 334, 340 (2012). "In a bid protest case, the agency's award must be upheld unless it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Turner Constr. Co. v. United States,* 645 F.3d 1377, 1383 (Fed.Cir.) (quoting *PAI Corp. v. United States,* 614 F.3d 1347, 1351 (Fed.Cir.2010)), *reh'g en banc denied* (Fed.Cir.2011).

In discussing the appropriate standard of review for bid protest cases, the United States Court of Appeals for the Federal Circuit specifically has addressed subsections (2)(A) and (2)(D) of 5 U.S.C. § 706, *see Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d at 1332 n. 5, but the Federal Circuit has focused its attention primarily on subsection (2)(A). *See NVT Techs., Inc. v. United States,* 370 F.3d 1153, 1159 (Fed.Cir.2004) ("Bid protest actions are subject to the standard of review established under section 706 of Title 5 of the Administrative Procedure Act ('APA'), 28 U.S.C. § 1491(b)(4) (2000), by which an agency's decision is to be set aside only if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' 5 U.S.C. § 706(2)(A) (2000).") (citations omitted); *Banknote Corp. of Am., Inc. v. United States,* 365 F.3d at 1350 ("Among the various APA standards of review in section 706, the proper standard to be applied in bid protest cases is provided by 5 U.S.C. § 706(2)(A): a reviewing court shall set aside the agency action if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" (citing *Advanced Data Concepts, Inc. v. United States,* 216 F.3d 1054, 1057–58 (Fed.Cir.), *reh'g denied* (Fed.Cir.2000))); *Info. Tech. & Applications Corp. v. United States,* 316 F.3d at 1319 ("Consequently, our inquiry is whether the Air Force's procurement decision was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' 5 U.S.C. § 706(2)(A) (2000).").

The United States Supreme Court has identified sample grounds which can constitute arbitrary or capricious agency action:

> [W]e will not vacate an agency's decision unless it "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

*Nat'l Ass'n of Home Builders v. Defenders of Wildlife,* 551 U.S. 644, 658, 127 S.Ct. 2518, 168 L.Ed.2d 467 (2007) (quoting *Motor Vehi-*

---

(1) compel agency action unlawfully withheld or unreasonably delayed; and
(1) hold unlawful and set aside agency action, findings, and conclusions found to be–
(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
(B) contrary to constitutional right, power, privilege, or immunity;
(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
(D) without observance of procedure required by law;
(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.
In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.
5 U.S.C. § 706.

cle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)); see also Alabama Aircraft Indus., Inc.–Birmingham v. United States, 586 F.3d 1372, 1375 (Fed. Cir.2009), reh'g and reh'g en banc denied (Fed.Cir.2010); In re Sang Su Lee, 277 F.3d 1338, 1342 (Fed.Cir.2002) ("The agency must present a full and reasoned explanation of its decision. . . . The reviewing court is thus enabled to perform a meaningful review . . . ."), aff'd on subsequent appeal, 262 Fed. Appx. 275 (Fed.Cir.2008); Textron, Inc. v. United States, 74 Fed.Cl. 277, 285–86 (2006), appeal dismissed sub nom. Textron, Inc. v. Ocean Technical Servs., Inc., 222 Fed.Appx. 996 (Fed.Cir.2007), and dismissed per stipulation sub nom. Textron, Inc. v. Ocean Technical Servs., Inc., 223 Fed.Appx. 974 (Fed. Cir.2007). The United States Supreme Court has also cautioned, however, that "courts are not free to impose upon agencies specific procedural requirements that have no basis in the APA." Pension Benefit Guar. Corp. v. LTV Corp., 496 U.S. 633, 654, 110 S.Ct. 2668, 110 L.Ed.2d 579 (1990).

■■■ A disappointed bidder has the burden of demonstrating the arbitrary and capricious nature of the agency decision by a preponderance of the evidence. See Grumman Data Sys. Corp. v. Dalton, 88 F.3d 990, 995–96 (Fed.Cir.1996); Contracting, Consulting, Eng'g LLC v. United States, 104 Fed.Cl. at 340; Textron, Inc. v. United States, 74 Fed.Cl. at 285; Labat–Anderson Inc. v. United States, 50 Fed.Cl. 99, 106 (2001); Emery Worldwide Airlines, Inc. v. United States, 49 Fed.Cl. 211, 222, aff'd, 264 F.3d 1071 (Fed.Cir.), reh'g and reh'g en banc denied (Fed.Cir.2001); Dynacs Eng'g Co. v. United States, 48 Fed.Cl. 614, 619 (2001); Ellsworth Assocs., Inc. v. United States, 45 Fed.Cl. 388, 392 (1999), dismissed per stipulation, 6 Fed.Appx. 867 (Fed.Cir.2001). The Federal Circuit has made clear that "[t]his court will not overturn a contracting officer's determination unless it is arbitrary, capricious, or otherwise contrary to law. To demonstrate that such a determination is arbitrary or capricious, a protester must identify 'hard facts;' a mere inference or suspicion . . . is not enough." PAI Corp. v. United States, 614 F.3d at 1352 (citing John C.

Grimberg Co. v. United States, 185 F.3d 1297, 1300 (Fed.Cir.1999); C.A.C.I., Inc.–Fed. v. United States, 719 F.2d 1567, 1581 (Fed.Cir.1983); and Filtration Dev. Co., LLC v. United States, 60 Fed.Cl. 371, 380 (2004)).

Furthermore, to prevail in a bid protest case, the protestor not only must show that the government's actions were arbitrary, capricious, or otherwise not in accordance with the law, but the protestor also must show that it was prejudiced by the government's actions. See 5 U.S.C. § 706 ("[D]ue account shall be taken of the rule of prejudicial error."). Recognizing the two-step analysis of bid protest cases, the Federal Circuit has stated that:

> A bid protest proceeds in two steps. First . . . the trial court determines whether the government acted without rational basis or contrary to law when evaluating the bids and awarding the contract. Second . . . if the trial court finds that the government's conduct fails the APA review under 5 U.S.C. § 706(2)(A), then it proceeds to determine, as a factual matter, if the bid protester was prejudiced by that conduct.

Bannum, Inc. v. United States, 404 F.3d at 1351. In describing the prejudice requirement, the Federal Circuit also has held that:

> To prevail in a bid protest, a protester must show a significant, prejudicial error in the procurement process. See Statistica, Inc. v. Christopher, 102 F.3d 1577, 1581 (Fed.Cir.1996); Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed.Cir.1996). "To establish prejudice, a protester is not required to show that but for the alleged error, the protester would have been awarded the contract." Data General, 78 F.3d at 1562 (citation omitted). Rather, the protester must show "that there was a substantial chance it would have received the contract award but for that error." Statistica, 102 F.3d at 1582; see CACI, Inc.–Fed. v. United States, 719 F.2d 1567, 1574–75 (Fed.Cir.1983) (to establish competitive prejudice, protester must demonstrate that but for the alleged error, " 'there was a substantial chance that [it] would receive an award—that it was within the zone of active consideration.' ") (citation omitted).

*Alfa Laval Separation, Inc. v. United States,* 175 F.3d 1365, 1367 (Fed.Cir.), *reh'g denied* (Fed.Cir.1999) (citation omitted in original); *see also Allied Tech. Grp., Inc. v. United States,* 649 F.3d 1320, 1326 (Fed.Cir.), *reh'g en banc denied* (Fed.Cir.2011); *Galen Med. Assocs., Inc. v. United States,* 369 F.3d at 1331; *Info. Tech. & Applications Corp. v. United States,* 316 F.3d at 1319; *Myers Investigative & Sec. Servs., Inc. v. United States,* 275 F.3d 1366, 1370 (Fed.Cir.2002); *Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d at 1332-33; *OMV Med., Inc. v. United States,* 219 F.3d 1337, 1342 (Fed.Cir.2000); *Advanced Data Concepts, Inc. v. United States,* 216 F.3d at 1057; *Stratos Mobile Networks USA, LLC v. United States,* 213 F.3d 1375, 1380 (Fed.Cir. 2000).

In *Data General Corporation v. Johnson,* the United States Court of Appeals for the Federal Circuit wrote:

> We think that the appropriate standard is that, to establish prejudice, a protester must show that, had it not been for the alleged error in the procurement process, there was a reasonable likelihood that the protester would have been awarded the contract.... The standard reflects a reasonable balance between the importance of (1) averting unwarranted interruptions of and interferences with the procurement process and (2) ensuring that protesters who have been adversely affected by allegedly significant error in the procurement process have a forum available to vent their grievances. This is a refinement and clarification of the "substantial chance" language of *CACI, Inc.–Fed. [v. United States],* 719 F.2d at 1574.

*Data Gen. Corp. v. Johnson,* 78 F.3d 1556, 1562 (Fed.Cir.), *reh'g denied, en banc* suggestion declined (Fed.Cir.1996); *see also Bannum, Inc. v. United States,* 404 F.3d at 1353, 1358 ("The trial court was required to determine whether these errors in the procurement process significantly prejudiced Bannum.... To establish 'significant prejudice' Bannum must show that there was a 'substantial chance' it would have received the contract award but for the [government's] errors" in the bid process. (quoting

*Info. Tech. & Applications Corp. v. United States,* 316 F.3d at 1319; *Alfa Laval Separation, Inc. v. United States,* 175 F.3d at 1367; *Statistica, Inc. v. Christopher,* 102 F.3d 1577, 1581 (Fed.Cir.1996); and *Data Gen. Corp. v. Johnson,* 78 F.3d at 1562)); *see also Galen Med. Assocs., Inc. v. United States,* 369 F.3d at 1331 ("To establish prejudice, the claimant must show that there was a 'substantial chance it would have received the contract award but for that error.'" (quoting *Statistica, Inc. v. Christopher,* 102 F.3d at 1582)); *Myers Investigative & Sec. Servs., Inc. v. United States,* 275 F.3d at 1370 (using the "substantial chance" standard); *OMV Med., Inc. v. United States,* 219 F.3d at 1342 (invoking a "reasonable likelihood" of being awarded the contract test); *Advanced Data Concepts, Inc. v. United States,* 216 F.3d at 1057 (using a "reasonable likelihood" rule); *Stratos Mobile Networks USA, LLC v. United States,* 213 F.3d at 1380 (using a "substantial chance" test); *Info. Scis. Corp. v. United States,* 73 Fed.Cl. 70, 96 (2006) (using a "substantial chance" test), *recons. in part,* 75 Fed.Cl. 406, 412 (2007) (using a "substantial chance" test); *Park Tower Mgmt., Ltd. v. United States,* 67 Fed.Cl. 548, 559 (2005) (using a "substantial chance" test). *But see Weeks Marine, Inc. v. United States,* 575 F.3d at 1362 (holding that a pre-award bid protest claimant must show "'a non-trivial competitive injury which can be redressed by judicial relief....'").

■ Under an arbitrary or capricious standard, the reviewing court should not substitute its judgment for that of the agency, but should review the basis for the agency decision to determine if it was legally permissible, reasonable, and supported by the facts. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. at 43, 103 S.Ct. 2856 ("The scope of review under the arbitrary and capricious standard is narrow and a court is not to substitute its judgment for that of the agency."); *see also R & W Flammann GmbH v. United States,* 339 F.3d 1320, 1322 (Fed.Cir.2003) (citing *Ray v. Lehman,* 55 F.3d 606, 608 (Fed.Cir.), *cert. denied,* 516 U.S. 916, 116 S.Ct. 304, 133 L.Ed.2d 209 (1995)). "If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it

might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations." *Honeywell, Inc. v. United States,* 870 F.2d 644, 648 (Fed.Cir. 1989) (quoting *M. Steinthal & Co. v. Seamans,* 455 F.2d 1289, 1301 (D.C.Cir.1971)); *see also HP Enter. Servs., LLC v. United States,* 104 Fed.Cl. 230, 238 (2012); *Vanguard Recovery Assistance v. United States,* 101 Fed.Cl. 765, 780 (2011); *Seaborn Health Care, Inc. v. United States,* 55 Fed.Cl. 520, 523 (2003) (quoting *Honeywell, Inc. v. United States,* 870 F.2d at 648 (quoting *M. Steinthal & Co. v. Seamans,* 455 F.2d at 1301)).

As stated by the United States Supreme Court:

> Section 706(2)(A) requires a finding that the actual choice made was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

*Citizens to Pres. Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), *abrogated on other grounds by Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *see also U.S. Postal Serv. v. Gregory,* 534 U.S. 1, 6–7, 122 S.Ct. 431, 151 L.Ed.2d 323 (2001); *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.,* 419 U.S. 281, 285, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974), *reh'g denied,* 420 U.S. 956, 95 S.Ct. 1340, 43 L.Ed.2d 433 (1975); *Co–Steel Raritan, Inc. v. ITC,* 357 F.3d 1294, 1309 (Fed.Cir.2004) (In discussing the "arbitrary, capricious, and abuse of discretion otherwise not in accordance with the law" standard, the Federal Circuit stated that "the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency."); *In re Sang Su Lee,* 277 F.3d at 1342; *Advanced Data Concepts, Inc. v. United States,* 216 F.3d at 1058 ("The arbitrary and capricious

standard applicable here is highly deferential. This standard requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors." (citing *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.,* 419 U.S. at 285, 95 S.Ct. 438)); *Lockheed Missiles & Space Co. v. Bentsen,* 4 F.3d 955, 959 (Fed. Cir.1993); *Gulf Grp. Inc. v. United States,* 61 Fed.Cl. 338, 351 (2004) ("Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency."); *ManTech Telecomms. & Info. Sys. Corp. v. United States,* 49 Fed.Cl. 57, 63 (2001), *aff'd,* 30 Fed.Appx. 995 (Fed.Cir. 2002); *Ellsworth Assocs., Inc. v. United States,* 45 Fed.Cl. at 392 (citing *Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 743–44, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985)) ("Courts must give great deference to agency procurement decisions and will not lightly overturn them.").

According to the United States Court of Appeals for the Federal Circuit:

> Effective contracting demands broad discretion. *Burroughs Corp. v. United States,* 617 F.2d 590, 598 (Ct.Cl.1980); *Sperry Flight Sys. Div. v. United States,* 548 F.2d 915, 921, 212 Ct.Cl. 329 (1977); *see NKF Eng'g, Inc. v. United States,* 805 F.2d 372, 377 (Fed.Cir.1986); *Tidewater Management Servs., Inc. v. United States,* 573 F.2d 65, 73, 216 Ct.Cl. 69 (1978); *RADVA Corp. v. United States,* 17 Cl.Ct. 812, 819 (1989), *aff'd,* 914 F.2d 271 (Fed. Cir.1990). Accordingly, agencies "are entrusted with a good deal of discretion in determining which bid is the most advantageous to the Government." *Tidewater Management Servs.,* 573 F.2d at 73.

*Lockheed Missiles & Space Co., Inc. v. Bentsen,* 4 F.3d at 958–59; *see also Grumman Data Sys. Corp. v. Dalton,* 88 F.3d at 995; *Grumman Data Sys. Corp. v. Widnall,* 15 F.3d 1044, 1046 (Fed.Cir.1994); *Cybertech Grp., Inc. v. United States,* 48 Fed.Cl. 638, 646 (2001) ("The court recognizes that the agency possesses wide discretion in the application of procurement regulations."); *Lockheed Missiles & Space Co. v. United States,* 4

F.3d at 958; *JWK Int'l Corp. v. United States*, 49 Fed.Cl. 371, 388 (2001), *aff'd*, 279 F.3d 985 (Fed.Cir), *reh'g denied* (Fed.Cir. 2002).

Similarly, the Federal Circuit further has indicated that:

> Contracting officers "are entitled to exercise discretion upon a broad range of issues confronting them in the procurement process." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed.Cir.2001) (internal quotation marks omitted). Accordingly, procurement decisions are subject to a "highly deferential rational basis review." *CHE Consulting, Inc. v. United States*, 552 F.3d 1351, 1354 (Fed.Cir.2008) (internal quotation marks omitted). Applying this highly deferential standard, the court must sustain an agency action unless the action does not "evince[ ] rational reasoning and consideration of relevant factors." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed.Cir.2000) (alterations added).

*PAI Corp. v. United States*, 614 F.3d at 1351; *see also Weeks Marine, Inc. v. United States*, 575 F.3d at 1368–69 ("We have stated that procurement decisions 'invoke[ ] "highly deferential" rational basis review.' Under that standard, we sustain an agency action 'evincing rational reasoning and consideration of relevant factors.'") (quoting *CHE Consulting, Inc. v. United States*, 552 F.3d at 1354 (quoting *Advanced Data Concepts, Inc. v. United States*, 216 F.3d at 1058)).

CICA generally directs executive agencies, "in conducting a procurement for property or services" to "obtain full and open competition though the use of competitive procedures."

41 U.S.C. § 3301(a)(1) (Supp. V 2011) (formerly 41 U.S.C. § 253(a)(1)(A) (2006)). As stated by the United States Court of Appeals for the Federal Circuit:

> CICA, however, does not prevent modification [18] of a contract by requiring a new bid procedure for every change. Rather only modifications outside the scope of the original competed contract fall under the statutory competition requirement. CICA sets forth no standard for determining when modification of an existing contract requires a new competition or falls within the scope of the original competitive procurement.

■ *AT & T Commc'ns, Inc. v. Wiltel, Inc.*, 1 F.3d 1201, 1204–05 (Fed.Cir.) (footnote removed), *reh'g denied, en banc suggestion declined* (Fed.Cir.), *suggestion for reh'g declined* (Fed.Cir.1993). Contract modification for changes beyond the scope of the original procurement, however, should not be utilized as a way to avoid competition. *See HDM Corp. v. United States*, 69 Fed.Cl. 243, 253 (2005) (citation omitted); *CESC Plaza Ltd. P'ship v. United States*, 52 Fed.Cl. 91, 93 (2002). Modifying an existing contract so that it materially departs from the scope of the original procurement violates CICA by preventing potential bidders from participating in or competing for what should be a new procurement. *See HDM Corp. v. United States*, 69 Fed.Cl. at 253; *see also AT & T Commc'ns, Inc. v. Wiltel, Inc.*, 1 F.3d at 1205; *VMC Behavioral Healthcare Servs. v. United States*, 50 Fed.Cl. 328, 332 (2001). A modification that is within the scope of the original procurement "does not raise a viable protest under [28 U.S.C.] § 1491(b)(1)." *See*

---

**18.** According to FAR 2.101(b), "contract modification means any written change in the terms of a contract (see [FAR] 43.103)." FAR 2.101(b) (current as of Nov. 21, 2012). FAR 43.103 further provides that "[c]ontract modifications are of the following types:

(a) Bilateral. A bilateral modification (supplemental agreement) is a contract modification that is signed by the contractor and the contracting officer. Bilateral modifications are used to—

(1) Make negotiated equitable adjustments resulting from the issuance of a change order;

(2) Definitize letter contracts; and

(3) Reflect other agreements of the parties modifying the terms of contracts.

(b) Unilateral. A unilateral modification is a contract modification that is signed only by the contracting officer. Unilateral modifications are used, for example, to—

(1) Make administrative changes;

(2) Issue change orders;

(3) Make changes authorized by clauses other than a changes clause (e.g., Property clause, Options clause, or Suspension of Work clause); and

(4) Issue termination notices."

FAR 43.103 (current as of Nov. 21, 2012).

*Distrib. Solutions, Inc. v. United States,* 539 F.3d at 1346; *See also Ceradyne, Inc. v. United States,* 103 Fed.Cl. 1, 12–13 (2012) (citing *AT & T Commc'ns, Inc. v. Wiltel,* 1 F.3d at 1204–05) ("If the modification materially departs from the scope, then a new competition may be required and jurisdiction will stand.... If the modification was, however, within the scope of the solicitation, the protest must be dismissed."); *RhinoCorps Ltd. Co. v. United States,* 87 Fed.Cl. 481, 489 (2009) (citing *AT & T Commc'ns, Inc. v. Wiltel,* 1 F.3d at 1205) ("[T]o sustain a bid protest stemming from a change or modification to a contract, the protestor must allege facts that establish that the modification falls outside the scope of the original contract, thereby triggering the statutory competition requirement. If any change made to a procurement is within the scope of work originally contemplated, no competition is required, and jurisdiction is not present.").[19]

The United States Court of Appeals for the Federal Circuit, accordingly, has recognized that modifications of an existing contract are permissible to procure products or services, as long as the modification is "within the scope of the original competitive procurement." *See AT & T Commc'ns, Inc. v. Wiltel, Inc.,* 1 F.3d at 1205; *see also Krygoski Constr. Co. v. United States,* 94 F.3d 1537, 1543 (Fed.Cir.) (citation omitted), *reh'g denied, en banc suggestion declined* (Fed. Cir.1996), *cert. denied,* 520 U.S. 1210, 117 S.Ct. 1691, 137 L.Ed.2d 819 (1997) (relying on *AT & T Communications, Inc. v. Wiltel, Inc.* in its analysis of a necessary change to a contract's scope); *Golden Mfg. Co., Inc. v.*

*United States,* No. 12-317C, 107 Fed.Cl. 264, 275, 2012 WL 4479422, at *10 (2012) (relying on *AT & T Communications, Inc. v. Wiltel, Inc.* when discussing an amendment to a contract solicitation); *Solute Consulting v. United States,* 103 Fed.Cl. 783, 792 (2012) (applying *AT & T Communications, Inc. v. Wiltel, Inc.* to the issue of the in-scope contract modification); *Ceradyne, Inc. v. United States,* 103 Fed.Cl. at 12 (analyzing *AT & T Communications, Inc. v. Wiltel, Inc.* to determine whether the contract modification was within the scope of the original procurement); *RN Expertise, Inc. v. United States,* 97 Fed.Cl. 460, 473 (using *AT & T Communications, Inc. v. Wiltel, Inc.* as a basis for the court's analysis of the contract modification), *reconsideration denied* (2011).

Because CICA itself does not define whether a modification of an existing contract is "within the scope of the original competitive procurement," the Federal Circuit has relied on the "cardinal change" doctrine by analogy as the test to ascertain whether the modification is in-scope or violates the competition requirements of CICA. *See AT & T Commc'ns, Inc. v. Wiltel, Inc.,* 1 F.3d at 1205 ("The cardinal change doctrine asks whether a modification exceeds the scope of the contract's changes clause; this case asks whether the modification is within the scope of the competition conducted to achieve the original contract. In application, these questions overlap."); *see also Ceradyne, Inc. v. United States,* 103 Fed.Cl. at 12 n. 9; *Cardinal Maint. Serv., Inc. v. United States,* 63 Fed.Cl. 98, 106 (2004). " '[A] car-

19. Although a number of decisions in the United States Court of Federal Claims indicate that this court lacks jurisdiction over a protest challenging a modification to a contract that is within the scope of the original procurement, one judge has argued in a footnote that these decisions "have elided the distinction between jurisdiction and merits, on the grounds that a modification within the scope of the contract does not involve a procurement and, therefore, does not trigger jurisdiction under [28 U.S.C. § ]1491(b)(1)." *See Int'l Genomics Consortium v. United States,* 104 Fed.Cl. 669, 675 n. 7 (2012). Given that a court's analysis of whether a modification to a contract is within the scope of the original procurement requires the court to consider the merits of a protestor's complaint, and considering the Federal Circuit's guidance that the meaning

of "procurement" under Section 1491(b)(1) extends to " 'all stages of the process of acquiring property or services, beginning with the process for determining a need for property or services and ending with contract completion and close-out,' " *see Sys. Application & Techs., Inc. v. United States,* 691 F.3d at 1381 (emphasis in original) (citation removed), a protest that challenges a modification to a contract that is within the scope of the original procurement may be more appropriately dismissed under Rule 12(b)(6) of the Rules of the Court of Federal Claims (RCFC) for failure to state a claim upon which relief may be granted, rather than under RCFC 12(b)(1) for lack of subject matter jurisdiction. As this distinction does not alter the ultimate resolution of this case, the court does not reach this issue.

dinal change ... occurs when the government effects an alteration in the work so drastic that it effectively requires the contractor to perform duties materially different from those originally bargained for.'" *AT & T Commc'ns, Inc. v. Wiltel,* 1 F.3d at 1205 (quoting *Allied Materials & Equip. Co. v. United States,* 215 Ct.Cl. 406, 409, 569 F.2d 562, 563–64 (1978)); *see also Krygoski Constr. Co. v. United States,* 94 F.3d at 1543. "Just as the cardinal change doctrine prohibits an agency from compelling a contractor to perform contract terms that are not within the scope of the original bargain, the CICA prevents an agency from modifying a contract to such an extent that the modified contract is 'materially different' from the contract for which a competition was held." *GraphicData, LLC v. United States,* 37 Fed. Cl. 771, 781 (1997) (citing *AT & T Commc'ns, Inc. v. Wiltel, Inc.,* 1 F.3d at 1205); *see also Mgmt. Solutions & Sys., Inc. v. United States,* 75 Fed.Cl. 820, 830 (2007); *cf. Solute Consulting v. United States,* 103 Fed.Cl. at 793 (discussing the merits of the GAO's application of the "material difference standard" to multiple-award contracts and its conclusion that " '[t]he analysis of whether a task order is outside the scope of a multiple-award contract is the same as the analysis of whether a contract modification is outside the scope of a single-award contract' " (alteration in original) (quoting *DynCorp Int'l LLC,* B–402349, 2010 CPD ¶ 59, 2010 WL 893517, at *4 (Comp.Gen. Mar. 15, 2010))).

▇▇▇ In determining whether a contract, as modified, is "materially different," a court should "first focus on the modification in the context of the original procurement" and then determine "the expectations of potential offerors." *See RN Expertise, Inc. v. United States,* 97 Fed.Cl. at 473–74 (citing *AT & T Commc'ns, Inc. v. Wiltel, Inc.,* 1 F.3d at 1205, 1207). The analysis of whether a contract modification "materially departs from the scope of the original procurement .... focuses on the scope of the entire original procurement in comparison to the scope of the contract as modified." *AT & T Commc'ns, Inc. v. Wiltel, Inc.,* 1 F.3d at 1205. "Thus a broad original competition may validate a broader range of later modifications without further bid procedures." *Id.*

at 1205. To determine whether a modification is within the scope of the original procurement, a court should consider whether the modification "substantially changes 'the type of work, performance period, and costs as between the original contract and the modified contract.'" *CESC Plaza Ltd. P'ship v. United States,* 52 Fed.Cl. at 93 (quoting *CCL, Inc. v. United States,* 39 Fed. Cl. 780, 791 (1997)); *see also Cardinal Maint. Serv., Inc. v. United States,* 63 Fed. Cl. at 106 (noting that the question of whether "the contract, as modified, is materially different from the contract that was originally competed ... turns on whether the original contract, as modified, calls for 'essentially the same performance'" (quoting *Exec. Bus. Media, Inc. v. United States Dep't of Defense,* 3 F.3d 759, 763 n.3 (4th Cir.1993))); *Northrop Grumman Corp. v. United States,* 50 Fed.Cl. 443, 466 (2001) (describing factors that courts have considered under the cardinal change doctrine, including "[c]hanges in the type of product or service that were not anticipated due to their lack of resemblance to the original procurement," "[s]ignificant addition or subtraction of the quantity of work," and "[a]dditional time spent on performance of a contract ... when such time is extended in order to add significantly more quantity or new requirements to the contract.").

"Because every situation in which parties enter into a contractual relationship is unique, there is no definitive test for determining whether a change is beyond the scope of a particular contract." *Keeter Trading Co. v. United States,* 79 Fed.Cl. 243, 260 (2007) (citation omitted); *see also Rumsfeld v. Freedom NY, Inc.,* 329 F.3d 1320, 1332 (Fed.Cir.), *reh'g and reh'g en banc denied,* 346 F.3d 1359 (Fed.Cir.2003), *cert. denied,* 541 U.S. 987, 124 S.Ct. 2016, 158 L.Ed.2d 491 (2004) ("The finding of a cardinal change is 'principally a question of fact'" (quoting *Allied Materials & Equip. Co. v. United States,* 215 Ct.Cl. at 411, 569 F.2d 562 at 565)); *Golden Mfg. Co., Inc. v. United States,* 107 Fed.Cl. at 274, 2012 WL 4479422, at *10 ("In emphasizing that there is no mechanical or arithmetical answer, we have repeated that (t)he number of changes is not, in and of

itself, the test[.]" (alterations in original) (quoting *Air-A-Plane Corp. v. United States,* 187 Ct.Cl. 269, 276, 408 F.2d 1030, 1033 (1969))); *ThermoCor, Inc. v. United States,* 35 Fed.Cl. 480, 490 (1996) (" 'Each case must be analyzed on its own facts and in light of its own circumstances, giving just consideration to the magnitude and quality of the changes ordered and their cumulative effect upon the project as a whole.' " (quoting *Wunderlich Contracting Co. v. United States,* 173 Ct.Cl. 180, 194, 351 F.2d 956, 966 (1965))).

■ In addition, as indicated by the Federal Circuit, a factor to consider when determining the scope of the original competition is " 'whether the solicitation for the original contract adequately advised offerors of the potential for the type of changes during the course of the contract that in fact occurred, or whether the modification is of a nature which potential offerors would reasonably have anticipated.' " *AT & T Commc'ns, Inc. v. Wiltel, Inc.,* 1 F.3d at 1207 (quoting *Neil R. Gross & Co., Inc.,* B-237434, 90-1 CPD ¶ 212, 1990 WL 269546, at *294 (Comp.Gen. Feb. 23, 1990) (citation omitted)); *see also RN Expertise, Inc. v. United States,* 97 Fed. Cl. at 474; *Chapman Law Firm Co. v. United States,* 81 Fed.Cl. 323, 327 (2008). "A modification generally falls within the scope of the original procurement if potential bidders would have expected it to fall within the contract's changes clause." *AT & T Commc'ns, Inc. v. Wiltel, Inc.,* 1 F.3d at 1205. Whether potential bidders would have anticipated a particular modification is judged under an objective standard, *see Global Computer Enters., Inc. v. United States,* 88 Fed.Cl. 52, 56 (2009); *CESC Plaza Ltd. P'ship v. United States,* 52 Fed.Cl. at 93 (citing *CCL, Inc. v. United States,* 39 Fed.Cl. at 791), and "depends heavily on the language of the solicitation." *See Northrop Grumman Corp. v. United States,* 50 Fed.Cl. at 466 (citing John Cibinic, Jr. & Ralph C. Nash, Jr., Administration of Government Contracts 389 (3d ed.1995)). If a court ulti-

mately finds a modification "to be outside the reasonable expectations of the bidders, the government must show that it adequately advised the bidders that such a change might occur." *Id.* at 465 (citation omitted).

American Apparel alleges that DLA violated the competition requirement in CICA and the Federal Acquisition Regulation in connection with the September 22, 2011 request for additional Items 0006 and 0007. Specifically, plaintiff contends that, pursuant to 10 U.S.C. § 2305(a)(2)(A)(i), FAR 15.304(c)(2), and FAR 16.505(b)(1)(v)(A)(1),[20] the agency was required to include non-price factors in its award evaluation criteria in addition to an evaluation based on price. American Apparel claims that the September 22, 2011 request for additional items was a solicitation, and resulted in a "competitive negotiated procurement" between two current contractors. Therefore, according to American Apparel, DLA was obligated to comply with the competition requirements mandated by CICA and the FAR and not only review price but also other factors, such as past performance. Plaintiff asserts that this court has jurisdiction to review its claims because it has alleged a "violation of statute or regulation in connection with a procurement or a proposed procurement." *See* 28 U.S.C. § 1491(b)(1).

The defendant, United States, and the defendant-intervenor and awardee of the added Items, Bluewater, both contend that American Apparel's claims fall outside the bid protest jurisdiction of this court under 28 U.S.C. § 1491(b), although each argues American Apparel's claims are not within the court's jurisdiction on different grounds. The government maintains that what occurred in this case was a modification by DLA of an existing contract, No. SPM1C1–10–D–1100, awarded to Bluewater on December 22, 2010, and that the inclusion of two additional all-weather coat types was a permissible in-scope modification of that existing Bluewater contract. Therefore, according to defendant,

---

20. Although American Apparel cites to FAR 16.505(b)(1)(v)(A)(1) in its complaint and its briefs quote the FAR provision, "Orders under multiple-award contracts," American Apparel does not address why it believes the multiple-award contract provision applies to the above-

captioned protest. DLA modified Bluewater's contract, No. SPM1C1–10–D1100, after requesting proposals from Bluewater and American Apparel for Items 006 and 007. DLA did not make this request under a master IDIQ contract.

plaintiff's complaint does not raise a viable protest under 28 U.S.C. § 1491(b)(1) over which this court would have jurisdiction, because it is a "challenge to the administration of BlueWater's Contract." In support of this argument, defendant cites *Distributed Solutions, Inc. v. United States*, 539 F.3d at 1346, which in turn cites *AT & T Communications, Inc. v. Wiltel, Inc.*, 1 F.3d 1201.

The government and Bluewater also contend that the phrase in the Add/Delete Clause, "[n]ew items may be added to the contract through bilateral modification with negotiated prices," should have alerted American Apparel in 2009, when the solicitation was issued, that the future award of additional items to be included in the contract would be based only upon price. The government and Bluewater argue that American Apparel waived any objection to the Add/Delete Clause by failing to object to the terms of the original September 10, 2009 solicitation prior to submitting its offer on October 28, 2009. The government concludes that American Apparel's alleged waiver also deprives this court of jurisdiction over American Apparel's protest, and, therefore, asks the court to dismiss American Apparel's complaint under RCFC 12(b)(1).[21]

Although not critical to the ultimate decision of the court in this case, American Apparel asserts it only became aware of DLA's intention to use price-only evaluation after receiving the June 6, 2011 notification from the government that American Apparel's proposal "was determined not to be the most advantageous to the Government based on price." Soon thereafter, on June 15, 2011, American Apparel filed a protest with the Government Accountability Office, raising its objection to the price-only evaluation. After review, DLA agreed that the February 18, 2011 request "did not clearly provide the basis for award," leading the agency to cancel the original request and reissue the request clearly identifying price as the only evaluation factor. American Apparel, therefore, argues that it should not be faulted for failing to protest the terms of the September

10, 2009 solicitation before submitting its offer to the solicitation on October 28, 2009. The court does not reach the issue of whether American Apparel's protest failed to object timely to the Add/Delete Clause in the September 10, 2009 solicitation because, as indicated below, the court dismisses American Apparel's complaint on alternate grounds, but notes that even defendant acknowledged and canceled the first request because a clearer articulation of the price-only evaluation was warranted.

■ The government asserts that DLA's April 18, 2012 modifications of Bluewater's original contract, No. SPM1C1–10–D–1100, awarded on December 22, 2010, to include two additional types of all-weather coats were simply "adding work to an existing contract that [were] clearly within the scope of the contract [which] does not raise a viable protest under § 1491(b)(1)." Plaintiff, by contrast, states: "American's position on this point is simple—Items 0006 and 0007 were not 'covered by' the original American or BlueWater Contracts, because DLA issued the 2011 Solicitation *in order to procure them*." (emphasis in original). Plaintiff characterizes the defendant's argument as follows:

> As the United States would have it, DLA is free to acquire additional items by contract modification as long as the item is covered by a generic description in a contract. Furthermore, DLA may do so without a competitive acquisition, without complying with CICA and FAR requirements on the conduct of such an acquisition, and with no regard whatsoever for non-price factors such as past performance.

Plaintiff asserts that defendant's "in-scope" modification argument, and defendant-intervenor's argument that plaintiff challenges the issuance of a delivery order, "mischaracterize" the issues alleged in its complaint. Specifically, plaintiff asserts that its complaint does not question the agency's right to modify an existing contract, but rather its decision to change the evaluation criteria from the original solicitation to exclude

---

21. Defendant-intervenor concludes that the court should dismiss American Apparel's complaint under RCFC 12(b)(6) for failure to state a claim

upon which relief can be granted, rather than RCFC 12(b)(1)

the non-price factors and to make the additional awards based only on price.

Plaintiff contends that the September 22, 2011 request for additional items was "part of a 'procurement' or 'acquisition' within the meaning of CICA and the FAR." [22] Plaintiff maintains that "[a]bsent valid grounds for conducting an acquisition using other than full and open competition (absent here), CICA and the FAR mandate that an acquisition be conducted using sealed bidding or competitive, negotiated acquisition. 10 U.S.C. § 2305(a)(2); FAR Subpart 6.4." According to plaintiff, because DLA invited competing proposals for the additional Items 0006 and 0007 from both American Apparel and Bluewater, and evaluated the proposals received in order to make an award, the September 22, 2011 request was a "competitive acquisition," which was required to comply with the competition requirements of CICA and the FAR. Plaintiff also claims that " '[p]ast performance should be an important element of every evaluation and contract award for commercial items.' " Plaintiff argues that DLA cannot evade the statutory "legal basic requirements by labeling its entire acquisition process for Items 0006 and 0007 a 'contract modification.' " Moreover, plaintiff contends that there is no provision contained in the Add/Delete Clause that authorizes the agency to depart from the mandatory competition requirements of CICA and the FAR.

American Apparel argues that its complaint is properly before this court pursuant to the Tucker Act, which grants this court jurisdiction to review an action brought by an interested party objecting to "any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." *See* 28 U.S.C. § 1491(b)(1). Plaintiff alleges that the phrase "in connection with a procurement or a proposed procurement" is " 'very sweeping in scope,' "

citing *Distributed Solutions, Inc. v. United States*, 539 F.3d at 1345, and allows the court to hear the current protest, challenging *"the terms of the 2011 Solicitation,* even if DLA subsequently implemented its resulting award decision via a modification to BlueWater's contract." (emphasis in original).

In *Distributed Solutions, Inc. v. United States*, 539 F.3d at 1345, the United States Court of Appeals for the Federal Circuit adopted the definition of "procurement" found in 41 U.S.C. § 403(2) (2006) (now codified at 41 U.S.C. § 111 (Supp. V 2011)), to determine the scope of 28 U.S.C. § 1491(b)(1). The court stated: " '[P]rocurement' includes all stages of the process of acquiring property or services, *beginning with the process for determining a need* for property or services and ending with contract completion and closeout." *Distrib. Solutions, Inc. v. United States*, 539 F.3d at 1345 (emphasis in original) (quoting 41 U.S.C. § 403(2)). The *Distributed Solutions* court further stated that "adding work to an existing contract that is clearly within the scope of the contract does not raise a viable protest under § 1491(b)(1)." *Distrib. Solutions, Inc. v. United States*, 539 F.3d at 1346 (citing *AT & T Commc'ns, Inc. v. Wiltel, Inc.*, 1 F.3d 1201). Similarly, in *RhinoCorps Ltd. Co. v. United States*, the United States Court of Federal Claims wrote: "The Federal Circuit pointedly excluded 'adding work to an existing contract' from the ambit of procurement actions." *RhinoCorps Ltd. Co. v. United States*, 87 Fed.Cl. at 486 (citation omitted). Both *Distributed Solutions* and *RhinoCorps* refer to the decision in *AT & T Communications, Inc. v. Wiltel, Inc.*, 1 F.3d at 1203, which states "the Competition in Contracting Act (CICA) does not require a separate competitive procurement for this modification . . . ." *See also Ceradyne, Inc. v. United States*, 103 Fed.Cl. at 12, n. 8 (indi-

---

**22.** The FAR defines an "acquisition" as:

the acquiring by contract with appropriated funds of supplies or services (including construction) by and for the use of the Federal Government through purchase or lease, whether the supplies or services are already in existence or must be created, developed, demonstrated, and evaluated. Acquisition begins at the point when agency needs are established

and includes the description of requirements to satisfy agency needs, solicitation and selection of sources, award of contracts, contract financing, contract performance, contract administration, and those technical and management functions directly related to the process of fulfilling agency needs by contract.

FAR 2.101(b).

cating this court's bid protest jurisdiction "turns on 'whether the modification is within the scope of the competition conducted to achieve the original contract.'" (quoting *AT & T Commc'ns, Inc. v. Wiltel, Inc.*, 1 F.3d at 1204–05)).

In *AT & T Communications, Inc. v. Wiltel, Inc.*, 1 F.3d 1201, the General Services Administration Board of Contract Appeals granted a bid protest challenging an agreement to modify a contract for government-wide telecommunications services. The contractor alleged that a contract modification that added a new, faster type of dedicated transmission service, "T3," to the three existing types of transmission services, including "T1," had exceeded the scope of original contract, and the modification required a separate, competitive procurement under CICA. *Id.* at 1204. The United States Court of Appeals for the Federal Circuit disagreed, and rejected the Board's narrow reading, which focused on the difference between T1 and T3, "rather than on the modification in the context of the contract as a whole." *See id.* at 1207. The Federal Circuit looked at the objective of the original contract, described broadly as "'a comprehensive set of telecommunications services' for the entire Federal Government," covering a "broad range of telecommunications services." *Id.* at 1205. The contract incorporated by reference a standard changes clause and a Service Improvements clause, which encouraged the contractors to propose improvements to the services, features, or other requirements of the contract. See *id.* at 1204. The Federal Circuit emphasized that the proposed improvements to the services were to be "'processed as modifications to the contract.'" *Id.* at 1206. The Federal Circuit further noted that the contract itself expressly mentioned transition to more advanced technology, giving bidders notice that the contract would require potentially significant modifications to meet the government's changing needs as the technology advanced. *See id.* The Federal Circuit pointed to "the contractor's obligation to improve Dedicated Transmission Service as a whole," and "to propose improvements to keep the Government's telecommunications technology in step with technology advances." *Id.* The Federal Circuit

concluded that "[a] modification adding a more advanced speed of dedicated transmission service does not substantially affect the type of service AT & T performs under the contract as a whole," *id.* at 1206–07, and held that the contract modification was within the scope of the original procurement. *Id.* at 1208. The Federal Circuit made clear that "CICA ... does not prevent modification of a contract by requiring a new bid procedure for every change," *id.* at 1205, and that "Congress did not intend to prevent contract modification." *Id.* at 1205n. 1. In fact, contract modification has been described as "contract administration," which is an agency responsibility. *See Cent. Tex. Coll. Sys.*, B–215172, 85–1 CPD ¶ 153, 1985 WL 52293, at *3 (Comp.Gen. Feb. 7, 1985).

American Apparel, however, argues that the September 22, 2011 request for additional items was a "competitive negotiated procurement." The provisions for contracting using negotiation procedures are included in FAR Part 15. The following types of negotiated acquisitions are identified in FAR 15.002:

(a) Sole source acquisitions. When contracting in a sole source environment, the request for proposals (RFP) should be tailored to remove unnecessary information and requirements; e.g., evaluation criteria and voluminous proposal preparation instructions.

(b) Competitive acquisitions. When contracting in a competitive environment, the procedures of this part are intended to minimize the complexity of the solicitation, the evaluation, and the source selection decision, while maintaining a process designed to foster an impartial and comprehensive evaluation of offerors' proposals, leading to selection of the proposal representing the best value to the Government (see [FAR] 2.101).

FAR 15.002 (current as of Nov. 21, 2012).

Although plaintiff argues that the September 22, 2011 request for additional items was a "competitive negotiated procurement," the administrative record does not support plaintiff's position. The title of the September 22, 2011 request for additional items stated that

it was intended to add items to the September 10, 2009 solicitation, and specifically identified that solicitation by number: "Addition of Items to Solicitation SPM1C1–08–R–0153 for Coats, All–Weather, Various, Men and Women, Indefinite Delivery Type Contract." Furthermore, the September 22, 2011 request invoked the Add/Delete Clause included in the 2009 solicitation as the basis for the manner of procurement of the new items, and explained that DLA intended to add Items 0006 and 0007 to either Bluewater's or American Apparel's contract. Using the procedures described in the referenced Add/Delete Clause, "bilateral modification with negotiated prices," the agency asked both contractors to submit price proposals for the additional items. The defendant explained at the oral argument, "the United States had a contractual right to modify this contract without using nonprice factors or CICA requirements," because "competition requirements were addressed in 2009 when these contracts were originally awarded." Both Bluewater and American Apparel were selected after the 2009 and 2010 full and open competition, with the agency considering the technical evaluations of the factors described above in addition to price for the all-weather coats for each of the offerors, including American Apparel and Bluewater. The all-weather coat contracts awarded to Bluewater and American Apparel on December 22, 2010 were "similar in kind and complexity" to the items to be added to the procurement "on a post-award basis via Add/Delete Clause" to contractors able to supply additional coats.

In *Ceradyne, Inc. v. United States*, a judge of the United States Court of Federal Claims found that the contract modification was within the scope of the original procurement, and offered the following guidance:

> This court has looked to a variety of factors to determine whether a contract, as modified, materially departs from the scope of the original procurement. Courts look to "whether the solicitation for the original contract adequately advised offerors of the potential for the type of changes during the course of the contract that in fact occurred, or whether the modification is of a nature which potential offerors

would reasonably have anticipated." *AT & T*, 1 F.3d at 1207 (quoting *Neil R. Gross & Co.*, 69 Comp. Gen 247 (1990)). Courts will also examine whether the modification substantially changes the type of product or service being delivered or performed, the quantity of the product or service, the performance period, and the costs as between the original contract and modified contract. *See Cardinal Maint. Serv.*, 63 Fed.Cl. at 106–07; *Northrop Grumman Corp. v. United States*, 50 Fed.Cl. 443, 466 (2001). Thus, if the court concludes as a matter of law that the modification was contemplated in the original procurement and the type of work, quantity, performance period, and costs have not substantially changed, CICA is not implicated and the protest must be dismissed.

*Ceradyne, Inc. v. United States*, 103 Fed.Cl. at 13 (citing *AT & T Commc'ns, Inc. v. Wiltel, Inc.*, 1 F.3d at 1208; *Distrib. Solutions, Inc. v. United States*, 539 F.3d at 1346). This language is instructive in the case before the court, although the court notes that the issues presented in *Ceradyne* were simpler than the issues presented here because, in *Ceradyne*, the Army did not have to alter any aspect of the original procurement, including the overall monetary ceiling, quantity, specifications, and unit price. *See Ceradyne, Inc. v. United States*, 103 Fed.Cl. at 14. The current American Apparel protest and *Ceradyne*, however, share general similarities including that the solicitations, as issued, contemplated that a future "next in line" award could be made by the government to add additional items, and the existing contract was modified to include the additional items.

Previously, the same Judge had offered similar advice in an earlier case, although in somewhat different terms:

> Significantly, CICA does not contain a standard for determining whether a modification falls within the scope of the original competed contract. To address this problem, the Federal Circuit looked to the "cardinal change" doctrine by analogy. The cardinal change doctrine prohibits the government from forcing contractors to undertake tasks that were not within the

scope of their original contract. In applying this concept to CICA, ... the government cannot modify a contract to such an extent that the contract, as modified, is materially different from the contract that was originally competed.... [T]he question turns on whether the original contract, as modified, calls for "essentially the same performance." [ (citation omitted) ]

*Cardinal Maint. Serv., Inc. v. United States,* 63 Fed.Cl. at 106.

In *Cardinal Maintenance,* the court, however, found the changes were "considerable," and the costs "extremely excessive," making it incorrect to identify them as modifications of the original contract, especially when the Air Force actually had deleted the Add/Delete Clause from the contract, *id.* at 107, and the government could not "point to any provision in the contract that show[ed] that the bidders were on notice that the types of changes which were made were within the scope of the contract." *Id.* at 109. Thus, the guidelines to this court regarding the distinction between a change that merely modifies an existing procurement and a change significant enough to warrant the issuance of a new solicitation remains of a general nature and is, therefore, left to the discretion of the trial court, based on the facts of an individual case. *See Keeter Trading Co. v. United States,* 79 Fed.Cl. at 260 ("[T]here is no definitive test for determining whether a change is beyond the scope of a particular contract.").

The objective of the September 10, 2009 solicitation was defined as the procurement of "Coats, All Weather, Various, Mens and Womens." The items solicited, at the time, were Item 0001, "PGC 02850 Coat, All Weather, Marine Corp Men's," Item 0002, "PGC 02851 Coat, All Weather, Marine Corp Women's," Item 0003, "PGC 02110 Coat, All Weather, Army Women's," Item 0004, "PCG 01940 Coat, All Weather, Navy Men's," and Item 0005, "PGC 01908 Coat, All Weather, Navy Women's." The agency also indicated, in its August 10, 2009 pre-solicitation Initial Procurement Synopsis that three additional all-weather coats "may be added on a post-award basis via Add/Delete Clause," listing them specifically as "PGC 02111 Army,

Men's, Coat, All Weather," "PGC 01958 Air Force Men's, Coat, All Weather," and "PGC 01959 Air Force Womens, Coat, All Weather."

The Add/Delete Clause included in the September 10, 2009 solicitation and incorporated by reference into Bluewater's contract stated, in pertinent part:

> b) New items may be added to the contract through bilateral modification with negotiated prices. All new requirements are subject to synopsis prior to addition to the contract.

The Add/Delete Clause appears on page 56 of the original September 10, 2009 solicitation, under the section "52.216–9006 Addition/Deletion of Items," including the following:

> As prescribed in 16.506(90), insert the following clause:
> ADDITION/DELETIONS OF ITEMS (AUG 2005)—DLAD.

\* \* \*

> b) New items may be added to the contract through bilateral modification with negotiated prices. All new requirements are subject to synopsis prior to addition to the contract.

Plaintiff argues that in the context of the entire solicitation, including the terms of the September 10, 2009 solicitation for the Items 0001 through 0005, as well as DLAD 16.506(90), application of the Add/Delete Clause, the process of addition or deletion of "items covered by the contract," must comply with competition requirements. Plaintiff maintains that the phrase contained in DLAD 16.506(90)(1) "[c]ompetition requirements must be addressed before new items may be added to a contract" supports its case. Defendant, on the other hand, asserts that "to the extent the language [of the DLAD 16.506(90)] applied to the Addition/Deletion clause," in-scope modifications are not subject to CICA requirements.

The Add/Delete Clause was invoked in the context of the August 10, 2009, pre-solicitation Initial Procurement Synopsis, issued by the agency, which announced the agency's intention to issue the solicitation and indicated that three more coats potentially could be

added to the procurement "on a post award basis:" Army Men's, Air Force Men's and Air Force Women's all-weather coats.

The Clause includes the following language:

> In accordance with DLAD Clause 52.216–9006, Addition/Deletion of Items, found on page 56 of the subject Solicitation SPM1C1–08–R–0153, the attached Items 0006 and 0007 for the Air Force/Coast Guard Men and Women All–Weather Coats are being solicited for addition to either the Universal All Weather Coat Contract SPM1C1–10–D–1099 or SPM1C1–10–D–1100.
>
> Offers will be evaluated based on price only.... All other terms and conditions of the offeror's contract, Contract SPM1C1–10–D–1009 [sic] and/or SPM1C1–10–D–1100 remain in effect and apply to the addition of items.

The September 22, 2011 corrected request for additional items not only referenced the Add/Delete clause in the 2009 solicitation, but also indicated that "[a]ll other terms and conditions of the offeror's contract ... remain in effect and apply to the additional items." The September 22, 2011 request included technical data for the new coats and stated that the coats were "considered to be within the scope of the universe of all-weather coats as they [were] similar in kind and complexity to all weather coat(s) under the Universal All–Weather Coat Contracts." Price offers for the new coats were requested from American Apparel and Bluewater. The May 13, 2011 DLA–FQCB Memo for Record stated "price will be the determining facts to the addition of items."

To determine whether the addition of Items 0006 and 0007 for Air Force/Coast Guard Men's and Women's All–Weather Coats were modifications or should have resulted in new competitive procurements requires a comparison of what occurred in this case in 2009 and 2011. Although the competition goals of CICA are a critical part of the government procurement framework, so is the modification process, if the procurement system is to function efficiently. *See AT & T Commc'ns, Inc. v. Wiltel, Inc.*, 1 F.3d at 1205, 1205 n. 1 (noting, with respect to CICA,

that "Congress did not intend to prevent contract modification"). This is why "only modifications outside the scope of the original competed contract fall under the statutory competition requirement[s]" of CICA. *Id.* at 1205.

Based on the language of the Add/Delete Clause, in addition to the earlier indication in the August 10, 2009 pre-solicitation Initial Procurement Synopsis that three additional items could be included in the contracts ultimately awarded to Bluewater and American Apparel, later identified as all-weather coats Items 0006 and 0007 for additional branches of the United States military, the court determines that what occurred in this case in 2011 was a modification to Bluewater's contract, No. SPM1C1–10–D–1100, that was within the scope of the original procurement. The original September 10, 2009 solicitation, listed five different coats as "items:" Marine Corp coats for men and women, Navy coats for men and women, and Army coats for women. The February 18, 2011 and September 22, 2011 requests for additional items added the same type of coats, with somewhat different specifications, but only slightly varying types of functionally similar all-weather military coats. Moreover, Item 0006, "PGC 01958 Coat, All Weather, Air Force/Coast Guard Men's" and Item 0007, "PGC 01959 Coat, All Weather, Air Force/Coast Guard Women's," were "items" contemplated by the agency at the time of original September 10, 2009 solicitation SPM1C1–08–R–0153, as evidenced by the August 10, 2009 pre-solicitation Initial Procurement Synopsis.

The line items solicited pursuant to the original procurement, and awarded to Bluewater and American Apparel on December 22, 2010, and the items added to Bluewater's contract on April 18, 2012, after reviewing price offers from American Apparel and Bluewater, were, as described by DLA, "similar in kind and complexity:" all-weather coats for the various branches of the United States military. See The May 13, 2011 DLA–FQCB Memo for Record; Combined Pre–Negotiation Briefing Memorandum (PBM)/Price Negotiation Memorandum (PNM)/Price Analysis. The fact that the

agency designated Items 0006 and 0007 as all-weather coats for "Air Force/Coast Guard," indicating that they could be used by either of the two branches, confirms the similarity of the coats, and reinforces that the "items" procured by the agency pursuant to the September 10, 2009 solicitation and September 22, 2011 notice are of similar kind and complexity. In fact, the government decided that there was no need to change any of the contracts terms upon the addition of the new items. "[T]he scope of the entire original procurement in comparison to the scope of the contract as modified," therefore, indicates that Bluewater's contract, as modified, did not "materially depart[ ] from the scope of the original procurement." *AT & T Commc'ns, Inc. v. Wiltel, Inc.*, 1 F.3d at 1205.

As stated in *AT & T Communications, Inc. v. Wiltel, Inc.*:

> An important factor in determining the scope of the original competition is "whether the solicitation for the original contract adequately advised offerors of the potential for the type of changes during the course of the contract that in fact occurred, or whether the modification is of a nature which potential offerors would reasonably have anticipated."

*Id.* at 1207 (quoting *Neil R. Gross & Co.*, 90–1 CPD ¶ 212, 1990 WL 269546, at *3 (citation omitted)). Because the Add/Delete Clause, in conjunction with the pre-solicitation Initial Procurement Synopsis, envisioned the addition of similar items, and both existing contractors were offered the same opportunity to submit price quotes to add one or both of the additional items to their existing contracts, American Apparel " 'would reasonably have anticipated' " the addition of Items 0006 and 0007 to either contract awarded under the original September 10, 2009 solicitation. *See id.* at 1207 (quoting *Neil R. Gross & Co.*, 90–1 CPD ¶ 212, 1990 WL 269546, at *3 (citation omitted)). The pre-solicitation Initial Procurement Synopsis "adequately advised" American Apparel that items, such as

Items 006 and 007, may be added to a contract awarded under the original September 10, 2009 solicitation. *See Northrop Grumman Corp. v. United States*, 50 Fed.Cl. at 465.

The most difficult part of the assessment in the instant case is that, in addition to a comparison of the type of work contemplated by the original procurement and the type of work contemplated by a contract modification, or a comparison between services or products procured under the original procurement and those added by a contract modification, courts also consider whether a contract modification significantly increases the costs of the contract, as compared to the original procurement. *See Cardinal Maint. Serv., Inc. v. United States*, 63 Fed.Cl. at 106; *CESC Plaza Ltd. P'ship v. United States*, 52 Fed.Cl. at 93. Some price increase certainly is to be anticipated with the addition of new items for production. By addition of Items 0006 and 0007, the total annual estimated amount of Bluewater's contract for Item 0001 was increased by "$17,-187,887.08 from $20,016,708.00 to $37,204,592.08 [sic]." [23] Although Bluewater's estimated contract price increased by approximately $17,187,887.08, the nature of the items procured under Bluewater's contract remained the same. The Weighted Average Price per unit for Items 0006 and 0007 was, respectively, [deleted] and [deleted], which was near the average of the Weighted Average Price per unit for Items 0001 through 0005, demonstrating that Items 0006 and 0007 were similar in price, and presumably quality, to Items 0001 through 0005. This is consistent with DLA's statement that Items 0006 and 0007 were "considered to be within the scope of the universe of all-weather coats as they are similar in kind and complexity to the all-weather coat(s) under the Universal All–Weather Coat Contracts."

As indicated in *Golden Manufacturing Co., Inc. v. United States*, 107 Fed.Cl. at 278–79, 2012 WL 4479422, at *14, it is not simply a

---

**23.** Although the modification of Bluewater's contract to include Items 0006 and 0007 states that it reflects a $17,187,887.08 increase in annual estimated price, the prices individually listed in the modification reflect a $17,187,884.56 in-

crease in price. In addition, an addendum to a Combined Pre–Negotiated Briefing Memorandum, dated April 11, 2012, indicates that the total estimated value of the amendment was $17,403,160.08.

matter of arithmetic calculations. In cases that apply the cardinal change doctrine, even a substantial price increase alone is not enough to establish that modifications are beyond the scope of a contract, as long as the nature and purpose of the contract has not changed. *See, e.g.*, *S.J. Groves & Sons Co. v. United States*, 228 Ct.Cl. 598, 602, 661 F.2d 170, 173 (1981); *Def. Sys. Grp.*, B240295, 1990 WL 293536 (Comp.Gen. Nov. 6, 1990) (a 120 percent increase in price was not a cardinal change because the nature and purpose of the contract had not changed). In contrast, in circumstances where a large price increase is accompanied by a substantial change in the nature of work contemplated by a contract, courts have deemed a contract modification to be a cardinal change. *See Golden Mfg. Co., Inc. v. United States*, 107 Fed.Cl. at 278–79, 2012 WL 4479422, at *14, (quoting *Cardinal Maint. Serv., Inc. v. United* States, 63 Fed.Cl. at 109) ("Where, as here, the amount of additional work nearly doubles the price of the contract that was awarded, and the nature of the work was so substantially increased that the change provision of the contract had to be deleted to accomplish the modifications, the originally awarded contract has been materially changed.").

In the case currently before the court, the nature and purpose of the work contemplated by the original September 10, 2009 solicitation, to provide service-member coats, remained unchanged. The agency consistently announced the contract's intended purpose, once in the September 10, 2009 solicitation, and again in the February 18, 2011 request for additional items, which remained constant in the September 22, 2011 request for additional items. The December 22, 2010 awards of contract Item 0001 to Bluewater, and contract Items 0002–0005 to American Apparel were made after evaluation of the product demonstration model (PDM), past performance/experience, and socioeconomic considerations. Both Bluewater and American Apparel, therefore, had gone through the entire evaluation process, and had been vetted and approved after a full and open competition prior to receiving the December 22, 2010 awards. The time to challenge those evaluations conducted by the agency is long past due.

The all-weather coats added to Bluewater's contract in 2012 are in the nature of modifications forecast in the 2010 contract between the defendant and Bluewater, and within the scope of the September 10, 2009 solicitation. Specifically, the items added to the Bluewater contract by DLA following the September 22, 2011 request did not differ materially from the other all-weather coats procured as a result of the September 10, 2009 solicitation. As stated by the agency in the May 13, 2011 DLA–FQCB Memo for Record; Combined Pre–Negotiation Briefing Memorandum (PBM)/Price Negotiation Memorandum (PNM)/Price Analysis:

> The Air Force Man and Woman All–Weather Coats are considered to be within the scope of the universe of all-weather coats as they are similar in kind and complexity to the all-weather coat(s) under the Universal All–Weather Coat Contracts. These additional items were also included in the synopsis of subject Universal AWC solicitation.

The addition of Item 0006, "PGC 01958 Coat, All Weather, Air Force/Coast Guard Men's" and Item 0007, "PGC 01959 Coat, All Weather, Air Force/Coast Guard Women's," to the existing Bluewater's Contract No. SPM1C1–10–D–1100, was an in-scope modification pursuant to the Add/Delete Clause also included as part of the 2009 solicitation and, therefore, not a material departure from the original procurement.

## CONCLUSION

For the reasons discussed above, the court concludes that the addition of two items by the defendant were in-scope modifications of the existing Bluewater contract for which new competition pursuant to CICA is not required. Defendant's motion to dismiss plaintiff's complaint is **GRANTED**. Defendant-intervenor's motion to dismiss plaintiff's complaint, as well as defendant's and plaintiff's cross-motions for judgment on the administrative record, are **MOOT**. Plaintiff's complaint is **DISMISSED**, regardless of whether the dismissal is for lack of subject matter jurisdiction or for failure to state a

claim. The Clerk of the Court shall enter **JUDGMENT** consistent with this opinion.

**IT IS SO ORDERED.**